## GOVERNMENT OF THE VIRGIN ISLANDS

v.

## Dayton WALLACE, Appellant.

### No. 81–2134.

United States Court of Appeals, Third Circuit.

Argued April 29, 1982.

Decided June 1, 1982.

---

John E. Stout, Richard E. Grunert (argued), Grunert, Stout, Hymes & Smock, St. Thomas, V. I., for appellant.

Ishmael A. Meyers, U. S. Atty., Hugh P. Mabe, III, Asst. U. S. Atty., St. Thomas, V. I., Sidney M. Glazer (argued), Atty., Appellate Section, Criminal Division, Dept. of Justice, Washington, D. C., for appellee.

## OPINION OF THE COURT

Before GARTH, Circuit Judge, ROSENN, Senior Circuit Judge, and HIGGINBOTHAM, Circuit Judge.

GARTH, Circuit Judge.

Dayton Wallace, an insanity acquittee, appeals from an order entered February 26, 1981 by the District Court of the Virgin Islands terminating his conditional release from confinement and recommitting him to the custody of mental health officials.[1]

In this appeal, Wallace does not challenge the propriety of his initial commitment or recommitment, but argues instead that the statute under which he was committed, V.I. Code Ann. tit. 5, § 3637 (1967), and the February 26 order violate the due process and equal protection guarantees of the United States Constitution and the Virgin Islands Revised Organic Act of 1954, 48 U.S.C. § 1561 (1976), by failing to provide adequate procedural protections against his being confined longer than necessary.

The district court, although rejecting Wallace's claims, ordered that counsel be appointed for Wallace and that hospital reports be furnished to the court every six months as to Wallace's mental condition. We affirm.

### I.

On August 26, 1969, Wallace stabbed his grandmother to death. On March 17, 1970,

---

1. The order reads:

**ORDER**

THIS MATTER came on to be heard on February 19, 1981, before Chief Judge Almeric L. Christian, pursuant to a request by Dr. Leighmin Lu, Chief of Psychiatry, Knud Hansen Memorial Hospital, for the Court to reconsider its Order of Conditional Release of Defendant from custody pursuant to 5 V.I.C. § 3637, entered on September 25, 1980. The Government of the Virgin Islands was represented by Gerald P. Boggess, Assistant Attorney General. John Stout, Esq. and Thomas D. Ireland, Esq., represented the Defendant. Dr. Leighmin Lu and Dr. Jeannette McDonald, qualified physicians licensed to practice in the Virgin Islands, testified on behalf of the Government. The Court, having entered its Findings of Fact and Conclusions of Law, and after due deliberation, it is hereby

ORDERED that the conditional release of Dayton Wallace heretofore ordered by this Court is hereby terminated.

FURTHER ORDERED that pursuant to 5 V.I.C. § 3637(a) the Court hereby commits Dayton Wallace to the custody of the Commissioner of Health for custody, care, and treatment until further order of this Court;

FURTHER ORDERED that the Commissioner of Health may transfer Dayton Wallace for such custody, care, and treatment to St. Elizabeth's Hospital, Washington, D. C. or any other facility suitable for such custody, care, and treatment.

FURTHER ORDERED that the Commissioner of Health and the Administrator of St. Elizabeth's Hospital, or other suitable facility, shall provide this Court a written report on the status of Dayton Wallace, no later than six months from the date of this Order, and every six months thereafter until further Order of this Court.

FURTHER ORDERED that a copy of this Order shall be served upon the Commissioner of Health, Dr. Leighmin Lu, Chief of Psychiatry, Knud Hansen Memorial Hospital, John Stout, Esq. and Thomas D. Ireland, Esq., counsel for defendant and the Administrator of St. Elizabeth's Hospital or other appropriate facility.

DATED: February 26, 1981    /s/ Almeric L. Christian

App. at 15–16.

he was found not guilty of first-degree murder by reason of mental illness and was committed to St. Elizabeths Hospital in Washington, D. C., for restraint, treatment, and detention, not to be discharged until the district court "shall be satisfied that [Wallace] has regained his capacity for judgment, discretion and control of the conduct of his affairs and social relations." App. at 5.

On April 23, 1980, the district court granted Wallace a conditional release from St. Elizabeths Hospital. On September 5, 1980, the hospital recommended that Wallace be returned to his home community in St. Thomas, Virgin Islands, and that he be continued on conditional release status under the supervision of the Virgin Islands Department of Health. On September 25, 1980, following a sanity hearing held at the request of the Department of Health, the district court ordered Wallace's conditional release.

On February 19, 1981, at the request of the Government of the Virgin Islands, another sanity hearing was held. At this hearing, the court found that Wallace continued to suffer from mental illness, that he had regressed from the time of his conditional release on September 25, 1980, and that his present condition "constitute[d] a danger, possibly homocidal, to others." *Id.* at 13. The court rejected Wallace's claim that he was entitled to periodic hearings initiated by the court or prosecution to review his commitment. *Id.* at 38–48.

The district court did, however, advise Wallace that it would extend to his case the practice it had established of requiring periodic reports on the status of persons civilly committed, that these reports would be distributed to counsel, and that counsel could then take whatever steps he deemed necessary. *Id.* at 31, 46. On February 26, 1981, after the hearing to which we have referred above, the court entered an order recommit-

ting Wallace to St. Elizabeths Hospital and requiring the Virgin Islands Commissioner of Health and the Administrator of the Hospital to provide the court with "a written report on the status of Dayton Wallace, no later than six months from the date of this Order, and every six months thereafter until further Order" of the court. *Id.* at 16. Wallace filed a notice of appeal from this order on March 6, 1981.

On August 4, 1981, subsequent to the filing of the instant appeal, the district court ordered that John E. Stout and Thomas D. Ireland, Wallace's counsel at trial and in the sanity hearings, "continue to represent defendant Dayton Wallace as co-counsel in any and all proceedings in connection herewith." *Id.* at 18.[2]

## II.

### A.

#### *Due Process*

The statute under which Wallace was committed, V.I. Code Ann. tit. 5, § 3637 (1967), provides that a person committed to a public institution following an acquittal of a criminal offense on the ground of mental illness is entitled to unconditional release upon certification by the head of the institution that the individual has recovered his sanity and will not be dangerous to himself or others. If the United States Attorney objects to release upon such a certification, the court must hold an evidentiary hearing to determine whether "such person has regained his capacity for judgment, discretion and control of the conduct of his affairs and social relations and will not in the reasonable future be dangerous to himself or others," and must order release if it so finds. The court, upon receipt of a release certification, may also elect to hold such a hearing *sua sponte.* The statute contains similar provisions for conditional release under su-

2. On April 27, 1981, also after the filing of this appeal, the district court, acting on a petition for conditional release filed by the staff at St. Elizabeths, again ordered that Wallace be conditionally released. The order directed that Wallace remain in the Washington, D. C. met-

ropolitan area as an outpatient under the supervision, care, guidance, and control of the Superintendent of St. Elizabeths. We are satisfied that in view of the continuing supervision maintained over Wallace, this case is not moot.

pervision.[3] In addition, under the habeas corpus statute, V.I. Code Ann. tit. 5, §§ 1301 *et seq.* (1967), a person confined by reason of mental illness may initiate an action to establish his eligibility for release.

Section 3637 leaves the initiation of proceedings to change a mental patient's level of confinement up to the hospital superintendent, who is under no obligation to review periodically the patient's status. Thus, under that statute, an insanity acquittee who was no longer dangerous to himself or others could conceivably languish in a mental institution for months or years simply because hospital officials never bothered to re-evaluate his mental condition, erroneously misdiagnosed his mental illness

as continuing, or deliberately refused to initiate judicial proceedings. It is for these reasons that Wallace contends section 3637 violates due process. He further argues that patient-initiated habeas corpus proceedings are inadequate to guard against unjustified confinement. Wallace asserts that due process requires periodic judicial review of the commitment of acquittees in the form of government-initiated recommitment hearings replete with the safeguards of an initial civil commitment hearing, at which the government bears the burden of proving the necessity for his continued confinement. *See Fasulo v. Arafeh,* 173 Conn. 473, 378 A.2d 553 (1977); *State v. Fields,* 77 N.J. 282, 390 A.2d 574 (1978).[4]

---

3. Section 3637 states:

(a) If the defense is the mental illness of the defendant, the jury shall be instructed, if they find him not guilty on that ground, to state that fact in their verdict, and the court shall thereupon commit the defendant to a suitable public institution for custody, care and treatment from which he shall not be discharged until the court is satisfied that he has regained his capacity for judgment, discretion and control of the conduct of his affairs and social relations.

(b) Where any person has been confined in a public institution pursuant to the provisions of subsection (a) of this section or otherwise in accordance with law, and the superintendent or head of such institution certifies (1) that such person has regained his capacity for judgment, discretion and control of the conduct of his affairs and social relations, (2) that, in the opinion of the superintendent or head, such person will not in the reasonable future be dangerous to himself or others, and (3) in the opinion of the superintendent or head, the person is entitled to discharge from the institution, and such certificate is filed with the clerk of the court in which the person was tried, and a copy thereof served on the United States attorney, such certificate shall be sufficient to authorize the court to order the discharge of the person so confined from further hospitalization; but the court in its discretion may, or upon objection of the United States attorney shall, after due notice, hold a hearing at which evidence as to mental condition of the person so confined may be submitted, including the testimony of one or more psychiatrists from said institution.... The court shall weigh the evidence and, if the court finds that such person has regained his capacity for judgment, discretion and control of the conduct of his affairs and social relations and will not

in the reasonable future be dangerous to himself or others, the court shall order such person discharged from further confinement in said institution. If the court does not so find, the court shall order such person returned to said institution.

(c) Where, in the judgment of the superintendent or head of such institution a person confined pursuant to the provisions of subsection (a) of this section, is not in such condition as to warrant his discharge, but is in a good condition to be conditionally released under supervision, and such certificate is filed and served in the same manner as provided in the preceding section, such certificate shall be sufficient to authorize the court to order the release of such person under such conditions as the court shall see fit. Provided, that the provisions of the preceding subsection as to hearing prior to discharge shall also apply to conditional releases, and, if, after a hearing and weighing the evidence, the court shall find the condition of such person warrants his conditional release, the court shall order his release under such conditions as the court shall see fit, or, if the court does not so find, the court shall order such person returned to such institution....

V.I. Code Ann. tit. 5, § 3637 (1967).

4. Since Wallace here is not challenging either his initial commitment or his recommitment, he has no standing to raise the issue of whether § 3637 or the February 26 order improperly allocate the burden of proof. Whatever burden of proof problems may exist in the abstract, they have not resulted in any injury of which Wallace complains in this case. Wallace does have standing to raise the issue of the absence of periodic review, since he alleges a present injury in being confined without adequate procedural safeguards against unjustified continuing commitment. That present injury stems

▓ This court, however, need not decide here whether section 3637, applied as written, would satisfy the due process concerns raised by Wallace. Even if we were to assume (and we do not so decide) that section 3637 is constitutionally defective because it fails to require review of the mental status of committed defendants on a regular basis, the fact remains that the February 26, 1981 order applicable to Wallace[5] essentially provided the safeguards that Wallace contends are required to satisfy due process considerations. In particular, that order required hospital officials to submit reports to the court on Wallace's condition every six months. These reports, the court said, would be forwarded to Wallace's counsel.

Although Wallace argues otherwise, the semi-annual reporting requirement imposed by the district court provides adequate assurance that changes in Wallace's need for confinement will not go unnoticed. By requiring hospital officials to submit reports on Wallace on a regular basis, the court thereby compels those authorities periodically to reconsider the necessity for Wallace's commitment. Moreover, the semi-annual reports, depending upon their substance, may well lead Wallace's counsel to

request a hearing on the need for further confinement, or the court could order one *sua sponte*.[6]

Wallace suggests, however, that periodic reports from hospital officials may not be free from error or offer a sufficiently reliable method of assessing his mental condition, and that formal periodic recommitment hearings are necessary. We cannot agree. We know of no constitutional prescription that requires that the full panoply of formal judicial procedures, including live psychiatric testimony,[7] be employed in periodic assessments of a committee's mental condition.[8]

There appears to be, moreover, no empirical justification for assuming that the reports submitted pursuant to the February 26 order would contain erroneous information or would not trigger a request by the hospital for Wallace's release if that course were indicated. Indeed, the record in this case indicates the contrary. The hospital staff initiated Wallace's first conditional release and his return to the Virgin Islands. After the instant appeal was filed, the staff again successfully petitioned the court for Wallace's conditional release. *See* note 2 *supra*.[9]

---

from the purported impairment of Wallace's ability to test the validity of his confinement on a continuing basis.

5. We note that this is not a class action on behalf of all those confined pursuant to § 3637, but an individual appeal from an order applicable to Wallace alone.

6. Under § 3637, certification by the hospital superintendent of the defendant's suitability for discharge is not *necessary* before the court can order him released; rather, the statute states that such certification is *sufficient* to authorize the court to so act.

7. *But cf. State v. Fields*, 77 N.J. 282, 304–05, 390 A.2d 574, 585 (1978) ("Since the committee's condition and consequent dangerousness are subject to possible change, ... [a]t the periodic reviews within the first two years after the entry of the initial order, the State should ordinarily offer the testimony of a psychiatrist concerning the committee's present mental condition and dangerousness attributable thereto.").

8. As the *Fields* court observed:

At the annual periodic review proceedings after the first two years, the necessity for presentation of testimony of a psychiatrist may be relaxed. The State may instead choose to utilize written reports of a psychiatrist who had testified in an earlier proceeding which reaffirmed or modified his earlier conclusions concerning a committee so long as those reports are based on a current reevaluation.

\* \* \* \* \* \*

We discern no unfairness in permitting written psychiatric reports, based on contemporaneous reevaluations, which confirm that the committee's condition has not materially changed for the better, to be sufficient to support the continuance of the prevailing restraints in the absence of any contrary evidence adduced by the committee.

*Id.* at 305–06, 390 A.2d at 585–86.

9. Because the April 27, 1981 order granting Wallace conditional release is not before us, we need not reach the question whether the same procedural safeguards are required when a person has been conditionally released from a mental institution as when he is subject to confinement.

The district court, however, did not rely solely on conscientious monitoring by the hospital staff as a means of preventing unwarranted confinement. As previously noted, the court indicated that it would forward the hospital superintendent's semi-annual reports to Wallace's counsel so counsel could take such action as the reports indicate may be necessary. After the order under review here was entered, the district court entered an additional order, providing for counsel to "continue to represent defendant Dayton Wallace . . . in any and all proceedings in connection herewith." App. at 18. We interpret this order as providing representation to include monitoring of Wallace's mental condition, review of all hospital reports submitted pursuant to the February 26 order, and the taking of any appropriate action in the event Wallace is again confined, including, if necessary, the procurement of psychiatric evaluations and the initiation of proceedings in the district court. We believe that the periodic reporting requirement, together with the appointment of counsel on a continuing basis, provide ample safeguards against any unwarranted confinement.[10] Thus, without addressing the constitutionality of V.I. Code Ann. tit. 5, § 3637—a matter we expressly do not decide—we are satisfied that Wallace's due process rights have not been violated.

## B.

### Equal Protection

■ Wallace argues that the release provisions of section 3637 deny him equal protection because they differ from the release provision applicable to involuntary civil

10. We disagree with Wallace's contention that a lawyer for a person confined because of mental illness "will typically not have the motivation or duty to keep a long-term eye on his one-time client's condition." Appellant's Brief at 30. A lawyer receiving periodic reports on a client's mental condition would have a duty to scrutinize those reports and to initiate judicial proceedings to secure his client's release if warranted by changed conditions.

11. The district court believed that differences were justified between the procedures applica-

commitments, V.I. Code Ann. tit. 19, § 723(e) (Supp.1982). *See Fields, supra.* Section 723(e), unlike section 3637, does provide for periodic judicial review:

A person committed under this section shall remain in the custody of the Division [of Mental Health, Alcoholism and Drug Dependency Services] for treatment for either a time certain established by the court or for an indefinite period, in which latter case the person's commitment shall be subjected to close periodic judicial scrutiny designed to protect said person from prolonged and unnecessary commitment.

This court need not decide whether a difference in review procedures for civil and criminal commitments would violate equal protection,[11] since in this case the February 26 order provided Wallace with the opportunity for comparable judicial scrutiny afforded persons civilly committed in the Virgin Islands. Again, the fact that Wallace might have been treated unequally under the literal terms of section 3637 does not diminish the fact that he was treated equally under the terms of the February 26 order.

## III.

As we have stated, in the context of this case we need not, and do not, pass on the constitutionality of section 3637. We have not addressed that question because it is clear that the district court's order of February 26, 1981 (as supplemented by its later order of August 4, 1981) accords to Wallace all the constitutional protection to which he is entitled.

The order of the district court dated February 26, 1981 will therefore be affirmed.

ble to persons civilly committed and those applicable to insanity acquittees. App. at 41–43. This question is presented, as well as other constitutional issues raised by Wallace, in *Jones v. United States*, 432 A.2d 364 (D.C.1981) (en banc), *cert. granted*, — U.S. —, 102 S.Ct. 999, 71 L.Ed.2d 293 (1982), currently pending before the United States Supreme Court. In light of our disposition of this case, we do not discuss or decide this broader equal protection issue.