UNITED STATES of America,
Plaintiff–Appellee,

v.

Victor Todd BUDELL, Defendant–
Appellant.

No. 98–30012.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 12, 1999.

Decided Aug. 17, 1999.

J. Mayo Ashley, Helena, Montana, for the defendant-appellant.

Bernard F. Hubley, Assistant United States Attorney, Helena, Montana, for the plaintiff-appellee.

Before: PREGERSON and THOMPSON, Circuit Judges, and TAKASUGI,* Senior District Judge.

TAKASUGI, Senior District Judge:

Victor Todd Budell ("Budell"), who has been institutionalized at the United States Medical Center in Springfield, Missouri, since his plea of not guilty only by reason of insanity, appeals from an order denying his pro se request for a discharge hearing and appointment of counsel. A certificate of appealability was denied by the district court.

We determine that a certificate of appealability was unnecessary because Budell's letter request was not a motion pursuant to 28 U.S.C. § 2255, and that Budell was effectively denied his statutory right to counsel and, therefore, reverse and remand this matter for further proceedings.

## I.

On November 20, 1989, Budell was charged with murder of a forest service employee, in violation of 18 U.S.C. §§ 1111 and 1114 (Count One); and with threatening the life of the President of the United States, in violation of 18 U.S.C. § 871 (Count Two).

At an evidentiary hearing before the district court on June 28, 1990, Budell was found competent to enter a plea and pled not guilty only by reason of insanity.[1] The district court found that Budell committed the offenses charged in the indictment but was unable to appreciate the nature or quality of his acts at the time of the commission of the acts constituting the offenses. Therefore, the district court committed Budell to the custody of the Attorney General pursuant to 18 U.S.C. § 4243(a), to be placed in a suitable facility for his care and treatment until the hearing on whether his release would pose a substantial risk of bodily injury to others or serious damage to the property of others.

Pursuant to 18 U.S.C. § 4243(c), a hearing was conducted before the district court on October 3, 1990, at which time Budell was represented by his appointed counsel who had represented him since his arraignment.[2] The court found that Budell

---

\* The Honorable Robert M. Takasugi, Senior United States District Judge for the Central District of California, sitting by designation.

1. At the hearing, according to the testimony of Donald R. Butts, M.D., staff psychiatrist at the Springfield Federal Medical Center, Budell was competent on June 28, 1990 to stand trial or enter a plea because of the medication he was taking at that time.

2. Although his counsel was never relieved and never asked to be relieved, it appears that the October 3, 1990 hearing was the last time Budell's counsel appeared or otherwise acted

had "failed to prove by clear and convincing evidence that his release would not create a substantial risk of bodily injury to another person or serious damage to property of another" and, therefore, remanded Budell to the custody of the Attorney General.

Upon such hospitalization, the director of the custodial facility is required to submit annual reports to the committing court concerning the mental condition of the insanity acquittee including recommendations concerning the need for continued hospitalization. 18 U.S.C. § 4247(e). However, it appears that no annual reports were submitted to the court for more than three years.

On July 28, 1993, Budell filed, pro se, a very articulate typewritten application for habeas corpus pursuant to, *inter alia*, 18 U.S.C. § 4247. By order filed September 1, 1993, the district court denied the habeas corpus application and ordered the Director of the Springfield Medical Center to provide the court with annual reports. In so doing, the court found Budell not qualified to render an opinion as to the risk he poses to others and "encourage[d] the Director of the Medical Center for Federal Prisoners to provide the court as soon as possible with the report required by ... statute," (9/1/93 Order at 3), noting the statutory language requiring that the director of the facility " '*shall prepare annual reports* ... [and that] *[t]he reports shall be submitted to the court that ordered the person's commitment to the facility ....*' " *Id.* (alteration in original) (quoting, 18 U.S.C. § 4247(e)(1)).

Thereafter, according to a reference made in a district court order of January 19, 1994, it appears that the first annual

report, or Risk Assessment Panel report ("RAP"), dated October 15, 1993, was received by the district court. However, the RAP does not appear anywhere in the record as the court never filed it or attached it to any order or other paper that has been filed. The docket sheet reveals that the district court has not filed any of the annual RAPs. However, an examination of the district court record indicates that the court received RAPs dated October 17, 1994 (with cover letter from the warden dated December 12, 1994),[3] October 2, 1995, August 19, 1996 and May 19, 1997.[4] There is no indication in the record that the district court received an annual report in 1998.

In a handwritten letter dated November 21, 1996,[5] Budell requested an annual release hearing "as I have never had a release hearing in the eight years that I've been committed." In connection therewith, Budell further requested "that the court appoint counsel to present my case as I have been run for release twice and the officials at Springfield can not find a facility to place me." Budell was referring to the fact that the annual reports for 1995 and 1996, contained the opinion from the Risk Assessment Panel that "Mr. Budell's mental illness was well controlled on the present regimen of treatment.... It was the unanimous opinion of the panel that Mr. Budell could be released from psychiatric hospitalization under certain specific conditions...." However, according to the warden's cover letters to the RAPs, the structured living environment and outpatient mental health services necessary to meet the specific conditions could not be found in the State of Montana, where Budell's mother lives. Both his request for annual release hearings and for appointment of counsel were denied by the district court by order filed December 3, 1996.[6]

as legal counsel for him until after Budell filed his notice of appeal.

**3.** Although this RAP was not filed by the district court, a copy was attached to the district court's order of December 21, 1994.

**4.** Although the RAPs dated October 2, 1995, August 19, 1996 and May 19, 1997 also were not filed by the district court, copies thereof were attached to Budell's pro se habeas cor-

pus petition filed September 26, 1997 seeking a discharge hearing pursuant to 18 U.S.C. §§ 4243–4247.

**5.** Although this letter has been clipped to the district court case file, it has not been filed by the court nor made a part of the record.

**6.** Although Budell requested appointment of counsel "to present my case," the district

By a handwritten letter dated April 8, 1997, which was filed by the district court more than six months later on October 29, 1997, Budell requested that a hearing be set pursuant to 18 U.S.C. § 4247, as soon as possible after the court's receipt of his 1997 RAP and that counsel be appointed to represent him.

According to the May 19, 1997 RAP, the Risk Assessment Panel

> concluded that Mr. Budell would not pose a danger to others or to the property of others due to mental illness if released to the home of his mother and required to follow a set of conditions. This opinion is based on his current psychiatric stability and evidence of improved insight and behavioral self-management. The panel recommended a conditional release to include outpatient psychiatric treatment, substance abuse counseling, compliance with medication, abstinence from drugs and alcohol, and no access to firearms or weapons of any kind. The panel agreed that Mr. Budell could reside with his mother as long as he followed all of the conditions of his release.

The October 20, 1997 cover letter to this RAP from the warden, P.W. Keohane, states the following:

> "Since the report was prepared, our efforts to secure appropriate mental health aftercare have met with negative results. A letter dated July 11, 1997, from the Mental Health Center, Billings, Montana, indicated that they were unable to safely manage the patient. Because the community resources necessary to facilitate Mr. Budell's successful adjustment in society are not currently

available, we propose he remain at the U.S. Medical Center, Springfield, Missouri...."

By order filed October 29, 1997, the court reaffirmed its October 3, 1990 finding that release of Budell would create a substantial risk of bodily injury to another person or serious damage to property of another and denied Budell's motions for a hearing and appointment of counsel.

On December 2, 1997, Budell filed a notice of appeal[7] and a motion to proceed on appeal *in forma pauperis* and for appointment of appellate counsel. By order filed December 23, 1997, the district court stated that "[d]efendant ha[d] already been granted *in forma pauperis* status for the pendency of this criminal matter .... [and that] Defendant does have court-appointed counsel, who has apparently declined to present this motion to the court."[8] The court also stated that "[i]n light of defendant's notice of appeal and to the extent that the court's October 29, 1997, order constitutes the denial of a petition for writ of habeas corpus, the court must consider whether to issue or deny a certificate of appealability...." The court denied the certificate of appealability and, thereupon, denied Budell's motion for *in forma pauperis* status and appointment of counsel as moot, "Defendant already having been granted both in forma pauperis status and court-appointed counsel."

This court has jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

Whether the denial of a certificate of appealability precludes this court from reaching the merits of this appeal is an

---

court, in its December 3, 1996 order, interpreted this as a request "to help him locate a residential facility, ... [which was] not an appropriate task for counsel...."

7. Because the notice of appeal was filed more than ten days, but within forty days, after entry of the order from which appeal was taken, this case was remanded to the district court pursuant to circuit court policy for the limited purpose of determining whether excusable neglect existed for the late filing of

the notice of appeal. By order filed August 5, 1998, the district court found excusable neglect noting, *inter alia*, that Budell is certified to be mentally ill and incarcerated and that "Budell's attorney apparently refused to file the motion for a hearing, which Defendant filed *pro se*."

8. "Although the district court had previously denied requests for appointment of counsel, this is the first time it mentioned that Budell already had counsel representing him."

issue of law, as is the issue whether the district court erred in denying Budell's motion for discharge hearing and for appointment of counsel. Review is, therefore, *de novo*. *United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## III.

### A. Certificate of Appealability

■ A certificate of appealability is a prerequisite to an appeal from "(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or (B) the final order in a proceeding under section 2255." 28 U.S.C. § 2253(c)(1).

Pursuant to 28 U.S.C. § 2255,

"[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

Because Budell was acquitted, he is not a "prisoner in custody under sentence," nor is he challenging a sentence. Therefore, Budell's motion for a discharge hearing and appointment of counsel under 18 U.S.C. § 4247 cannot be construed as a § 2255 motion. As such, a certificate of appealability is not a prerequisite to Budell's appeal.[9]

### B. Denial of Appointment of Counsel

■ The issue here is whether an insanity acquittee is entitled to appointment of counsel. "[F]or the ordinary citizen, commitment to a mental hospital produces 'a massive curtailment of liberty,' *Humphrey v. Cady,* 405 U.S. 504, 509, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972), and in consequence 'requires due process protection.' *Addington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)...." *Vitek v. Jones,* 445 U.S. 480, 491–92, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980).

A commitment hearing is a civil matter. *Addington v. Texas,* 441 U.S. 418, 428, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) ("[i]n a civil commitment state power is not exercised in a punitive sense"); *United States v. Copley,* 935 F.2d 669, 672 (4th Cir.1991). Thus, the constitutional rights to which a defendant in a criminal trial is entitled do not adhere to a respondent in a commitment hearing. Nonetheless, because an adverse result in a commitment hearing results in a substantial curtailing of the respondent's liberty ..., the Supreme Court has held that procedural due process does guarantee certain protections to civil commitment respondents.

*U.S. v. Baker,* 45 F.3d 837, 842–43 (4th Cir.), *cert. denied,* 516 U.S. 872, 116 S.Ct. 194, 133 L.Ed.2d 130 (1995).

■ It is clear that at a civil commitment hearing an insanity acquittee is constitutionally entitled to counsel. But, what due process rights does an insanity acquittee have after he is hospitalized? "At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana,* 406 U.S. 715, 738, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972). "In short, a State cannot constitutionally confine without more a nondangerous individual who is capable of surviving safely in freedom by

---

9. Even if it could be argued that for purposes of § 2255 a civil commitment order should be viewed as a sentencing order, Budell is not challenging the commitment order. Instead, he is seeking a discharge hearing based on a challenge to his continued hospitalization. As such, even under such a statutory construction, his motion would be akin to a habeas petition, not a motion under § 2255 and, therefore, a certificate of appealability would still not be a prerequisite to appeal.

himself or with the help of willing and responsible family members or friends." *O'Connor v. Donaldson,* 422 U.S. 563, 576, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). As such, the focus of due process protection turns to the insanity acquittee's interest in regular review of his continued confinement. Unlike a prisoner who serves a determinate sentence, an insanity acquittee, once institutionalized, will remain hospitalized until ordered discharged by the court that ordered the commitment. Because the status quo of hospitalization will remain in effect if nothing is done to trigger a discharge, an insanity acquittee is entitled to due process protection to the extent he may no longer be a danger to society.

According to *Hickey v. Morris,* 722 F.2d 543 (9th Cir.1983), due process does not require automatic periodic adversary hearings when the acquittee is provided with regular examinations by health professionals " 'so long as he or she is free to evaluate independently [the patient's] mental or emotional condition and need for treatment.' " *Id.* at 548 (alteration in original) (quoting, *Parham v. J.R.,* 442 U.S. 584, 607, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979)). In *Hickey,* due process protection for an insanity acquittee's interest in regular review of his continued confinement was recognized. However, Washington's requirement of independent health examinations was held to be adequate protection of that interest.

In *United States v. LaFromboise,* 836 F.2d 1149, (8th Cir.1988), the court viewed the constitutional right to counsel in the same light as the right to periodic adversary hearings was viewed in *Hickey,* and held that due process did not require continuous representation by counsel after the initial commitment hearing "if the hospital administration acts independently" in preparing periodic reports.[10] *Id.* at 1152.

With this constitutional backdrop, the question becomes what protection is provided by the statutory scheme at 18 U.S.C. §§ 4241, et seq. for the insanity acquittee's due process right to regular review of his continued confinement. In addition to requiring the director of the facility to prepare and submit annual reports to the court concerning the mental condition of the hospitalized person and containing recommendations concerning the need for continued hospitalization, it requires that such acquittees be represented by counsel at any discharge hearing, 18 U.S.C. § 4247(d), and allows counsel for the insanity acquittee to file a motion for a discharge hearing. 18 U.S.C. § 4247(h).

It is apparent from the record below that the mere statutory requirement for annual reports, without some mechanism to insure compliance, will not necessarily be met. When the director of the facility fails to provide the court with the required annual reports (which was the case here for more than three years), due process requires the statutory scheme to provide assurance that the insanity acquittee's right to regular review of his continued confinement will be adequately protected.[11]

---

**10.** The *LaFromboise* court, however, went on to state as follows:

> Notwithstanding our holding in this case, we commend to district courts in this circuit the practice approved in *Government of the Virgin Islands v. Wallace,* 679 F.2d 1066 (3rd Cir.1982). In *Wallace,* the district court required an appointed lawyer to represent the acquittee in all matters connected with the commitment, including the monitoring of the acquittee's mental health, the reading of all reports on the acquittee, and the initiation of any necessary action to protect the acquittee's interests; and required the hospital superintendent to forward his reports to the counsel of the acquittee for review. *Id.* at 1071.

836 F.2d at 1152.

**11.** There is another issue as to the sufficiency of the annual reports: Although the RAP is prepared by medical professionals (a team of psychiatrists and psychologists), the cover letter is from a Bureau of Prisons warden. The recommendation from the warden in his cover letter is separate and apart from the recommendation contained in the RAP. The only recommendation by independent health professionals is in the RAP; however, it is the recommendation of the warden in his cover letter that is considered by the court as the

Section 4247(h) provides that "counsel for the [hospitalized] person or his legal guardian may, at any time during such person's hospitalization, file with the court that ordered the commitment a motion for a hearing to determine whether the person should be discharged from such facility...."

This statutory language clearly contemplates that hospitalized persons will be represented by counsel for the purpose of filing a motion for a discharge hearing because it affirmatively refers to "counsel for the person," rather than just "the person." Moreover, while it expressly provides for counsel to file a motion, it does not expressly provide for the hospitalized person to file a motion on his own behalf. In fact, it is the government's position that § 4247(h) does not permit a hospitalized person to file a motion pro se.[12]

The importance of the right to counsel at the hearings is easily understood. However, the right to counsel to file a motion for a discharge hearing may be even more important. The insanity acquittee's motion for a discharge hearing may be the only way to trigger the release of one who no longer poses a danger to society, especially in the case where there is a failure by the institution to properly prepare and submit the required annual reports, as was the case here. To effectively insure that an insanity acquittee is afforded his due process right to regular review of his continued confinement and to effectuate a reasonable interpretation of the language of 18 U.S.C. § 4247(h) such acquittee should be afforded counsel for the purpose of filing a motion for a discharge hearing. That can only be accomplished by appointing counsel "to represent the acquittee in all matters connected with the commitment, including the monitoring of the acquittee's mental health, the reading of all reports on the acquittee, and the initiation of any necessary action to protect the acquittee's interests." *LaFromboise,* 836 F.2d at 1152.

■ It is the government's position that Budell has, in fact, been represented by counsel at all times during his commitment. However, it is clear from the brief filed by Budell's attorney that said attorney believed his role as counsel terminated with the conclusion of the October 3, 1990 civil commitment hearing. That is supported by the fact that the record of the district court shows no activity by counsel after that date, even when the director of the medical center failed to submit the required annual reports.

The district court seems to have assumed the same. Several handwritten letters from Budell were received by the court over the years; some were accepted for filing pro se without referral to Budell's attorney for his consideration and/or action. Furthermore, there is no indication in the record that the court ever forwarded any of Budell's correspondence to his attorney although the letters clearly exhibited Budell's belief that he was not represented by counsel and his desire to be so represented. Moreover, in the October 29, 1997 order—the order that is the subject of this appeal—as well as in response to previous pro se requests by Budell for appointment of counsel, the district court denied appointment never mentioning that Budell already had appointed counsel. After Budell filed his notice of appeal, the district court seems to have assumed differently. In denying the certificate of appealability and in finding excusable neglect in Budell's late filing of the appeal the district court has expressly referred to the fact that Budell already had appointed counsel.

recommendation of the annual report. The issue is whether such a recommendation by a Bureau of Prisons warden is sufficient to meet the due process requirements of (1) independent evaluations by (2) health care professionals as required under *Hickey v. Morris* and *United States v. LaFromboise.*

12. We do not reach whether § 4247(h) prohibits a hospitalized person from filing a motion on his own behalf or whether such a prohibition would be constitutional.

This confusion, together with the district court's denial of Budell's request for appointment of counsel, has effectively denied Budell his statutory right to be represented by counsel for the purpose of filing a motion for a discharge hearing.

Accordingly, the district court's denial of Budell's motion for appointment of counsel is reversed and this matter is remanded for further proceedings consistent with this opinion.

REVERSED and REMANDED.