82 F.Supp.2d 1098 (2000)
In re INDEFINITE DETENTION CASES.
No. CV 98-674 TJH (JWJX).
United States District Court, C.D. California, Western Division.
January 27, 2000.
*1099 Maria E. Stratton, Federal Public Defender, David S. McLane, Deputy Federal Public Defender, Robert Boyle, Deputy Federal Public Defender, Los Angeles, CA, for Petitioners.
Alejandro N. Mayorkas, United States Attorney, Leon W. Weidman, Assistant United States Attorney, John B. Bartos, Special Assistant United States Attorney, Los Angeles, CA, for Respondent.

Memorandum Opinion
HATTER, Chief Judge.
These petitions for writs of habeas corpus were brought by aliens subject to deportation orders and awaiting repatriation. The Petitioners have challenged their indefinite detention by the Immigration and Naturalization Service ("INS") pending repatriation. Since the petitions raise common legal issues, they were reassigned to this Court and to the low number Magistrate Judge for each country of repatriation. A hearing was held and the Petitioners and the INS presented arguments on the common issues.
This Court has jurisdiction since it would be futile to require the Petitioners to exhaust their administrative remedies. Further, each Petitioner is entitled to a determination as to whether his or her individual substantive due process rights have been violated. The discussion below is to assist the Magistrate Judges in their determination.

JURISDICTION
This Court has jurisdiction under 28 U.S.C. § 2241 to consider the constitutionality of the Petitioners' detention. See Walters v. Reno, 145 F.3d 1032 (9th Cir. 1998); Sandoval v. Reno, 166 F.3d 225 (3d Cir.1999); Henderson v. INS, 157 F.3d 106 (2d Cir.1998), cert. denied, 525 U.S. ____, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999); Goncalves v. Reno, 144 F.3d 110 (1st Cir. 1998), cert. denied, 525 U.S. ____, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999); and Phan v. Reno, 56 F.Supp.2d 1149 (W.D.Wash.1999)

EXHAUSTION OF ADMINISTRATIVE REMEDIES
Usually, petitioners must exhaust administrative remedies before filing a petition for a writ of habeas corpus. See McCarthy v. Madigan, 503 U.S. 140, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). "But, where the administrative forum would `provide no real opportunity to present' the constitutional issues ..., requiring exhaustion `makes little sense.'" Legalization Assistance Project v. INS, 976 F.2d 1198, 1203 (9th Cir.1992) (citations omitted). See also, Tam v. INS, 14 F.Supp.2d 1184, 1189 (E.D.Cal.1998).
There are regulations at 8 C.F.R. § 236.1(d)(2) which allow a detainee to request release from an INS district director and at 8 C.F.R. § 236.1(d)(3) which permit an appeal to the Board of Immigration Appeals. The factors a district director may consider are listed in 8 C.F.R. § 241.4(a). However, the regulations do not specify how the factors are to be *1100 weighted or whether some are more important than others.
To supplement the regulations, the INS, from time to time, adopts various policies. The most recent policies were by way of memoranda in February and August, 1999. The February memorandum included requirements that the district director review the detention before the 90 day removal period expired, that all evidence presented by or on behalf of aliens be written, and that the decision not to release an alien was not appealable to the BIA if the alien did not make a written request. The second memorandum established a timetable for periodic reviews and written notices. However, these policies, which are subject to change, and the regulations which they supplement, do not meet the minimum standards for due process.
Indeed, based upon the evidence presented, the INS has not meaningfully and impartially reviewed the Petitioners' custody status. The absence of any individualized assessment or consideration of each Petitioner's situation in light of the pertinent factors set forth in the regulations violated his or her procedural due process rights. Thus, while the procedures are inadequate, the implementation has been even less adequate.
Therefore, requiring Petitioners to exhaust their administrative procedures would be futile.

SUBSTANTIVE DUE PROCESS
The INS suggests that Petitioners have no substantive due process right to be released from detention. The INS would have this Court adopt the reasoning of Barrera-Echavarria v. Rison, 44 F.3d 1441, 1450 (9th Cir.), cert denied, 516 U.S. 976, 116 S.Ct. 479, 133 L.Ed.2d 407 (1995), to these deportable Petitioners: "Because excludable aliens are deemed under the entry doctrine not to be present on United States territory, a holding that they have no substantive right to be free from immigration detention reasonably follows."
However, as the Ninth Circuit noted:
The Supreme Court has consistently recognized that "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality. In the latter instance, the Court has recognized additional rights and privileges not extended to those in the former category who are merely `on the threshold of initial entry.'" Leng May Ma v. Barber, 357 U.S. 185, 187, 78 S.Ct. 1072, 1073, 2 L.Ed.2d 1246 (1958).
Barrera-Echavarria 44 F.3d at 1448.
This Court finds that Petitioners, all of whom are "within the United States after an entry," are entitled to substantive due process protection. See also Phan and Vo v. Greene, 63 F.Supp.2d 1278 (D.Colo. 1999). Since each Petitioner is entitled to substantive due process, the respective Magistrate Judge must examine each petition on a case by case basis to determine whether those rights have been violated, and, if so, whether the Petitioner should be released. The standard for that review is set forth below.

EVALUATING THE SUBSTANTIVE DUE PROCESS CLAIMS
Government invasions of fundamental liberty interests are subject to strict scrutiny review. The deprivation of a fundamental liberty interest will comport with due process only if it is narrowly tailored to serve a compelling government interest. Reno v. Flores (Flores), 507 U.S. 292, 301-2, 113 S.Ct. 1439, 1447, 123 L.Ed.2d 1, 16 (1993)(O'Connor, J., concurring). This requires the Court to consider the constitutionality of the detention in light of its purpose, and to ask whether the detention is based upon "permissible" regulatory goals of the government and, if it is, whether the detention is excessive in relation to those goals. United States v. Salerno, 481 U.S. 739, 747, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697, 708 (1987).
*1101 The legislative and executive branches possess "plenary power" over immigration and naturalization, Flores, 507 U.S. at 305-6, 113 S.Ct. at 1439, 123 L.Ed.2d at 19, and the judicial branch generally defers to the legislative and executive branches on substantive immigration matters. INS v. Aguirre-Aguirre, 526 U.S. 415, ___, 119 S.Ct. 1439, 1445, 143 L.Ed.2d 590, 601 (1999). However, detention threatens the deprivation of a fundamental liberty interest and clearly triggers "heightened, substantive due process scrutiny," not judicial deference. Flores, 507 U.S. at 316, 113 S.Ct. at 1454-1455, 123 L.Ed.2d 1. (O'Connor, J., concurring). Thus, this Court finds that the plenary power doctrine does not support a deferential standard of review of Petitioners' detention. Indeed, heightened scrutiny applies.
The INS advances three regulatory interests, all of which satisfy the "permissible" standard: (1) ensuring the removal of aliens ordered deported; (2) preventing flight prior to deportation; and (3) protecting the public from dangerous felons. See 8 U.S.C. § 1231(a)(6). The government has a legitimate interest in securing the safe removal of aliens. The latter two goals are incidental to this primary objective and derive solely from the power to deport. The detention of aliens ordered deported is not a matter of immigration policy but domestic interests, i.e., chiefly the prevention of flight and the protection of the community.
Thus, the question is whether detention of each Petitioner is excessive in relation to these interests. In determining this, the Magistrate Judges must balance the likelihood that the INS actually will be able to deport a Petitioner against the Petitioner's danger to the community and the likelihood that a Petitioner will flee if not detained. As the probability that the government actually can deport an alien decreases, the government's interest in detaining that alien becomes less compelling and the denial of the alien's liberty more severe. Dangerousness and flight risk are permissible considerations and may, in certain situations, warrant continued detention, but only if there is a realistic chance that an alien will be deported. Therefore, it would be a violation of substantive due process to detain an alien indefinitely if deportation will never occur.
If there is no reasonable likelihood of repatriation in the foreseeable future, the Petitioner may only be detained pursuant to involuntary commitment procedures such as those outlined in Foucha v. Louisiana, 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992), or pursuant to criminal prosecution for new criminal activity.
In deciding whether a Petitioner is dangerous or might flee, the Magistrate Judges must ensure the following basic protections:
1. The burden of proof is on the government and the evidence must be clear and convincing. See Foucha, 504 U.S. at 80-81, 112 S.Ct. at 1786, 118 L.Ed.2d at 448-49.
2. Petitioners are entitled to counsel to represent them at all hearings. See United States v. Budell, 187 F.3d 1137, 1141 (9th Cir.1999)
3. Petitioners must have an opportunity to confront any evidence against them, cross-examine any witnesses against them, and present evidence and testimony on their behalf. See Phan, 56 F.Supp.2d at 1157.
4. Petitioners are entitled to be released if the government cannot meet its burden. See Foucha, 504 U.S. at 77-79, 112 S.Ct. at 1784-85, 118 L.Ed.2d at 446-47.
This is not to say that the release should be unconditional. In United States v. Witkovich, 353 U.S. 194, 199-200, 77 S.Ct. 779, 782, 1 L.Ed.2d 765, 769 (1957), the Court established requirements that may be imposed on an alien who has been ordered deported but who cannot be. A released alien could be required to:
1. Appear periodically before an immigration officer for identification;

*1102 2. Submit to medical or psychiatric examinations;
3. Give such information as the Attorney General may deem proper; and
4. Conform to such restrictions on conduct or activities as prescribed, including the posting of a cash or property bond.
The primary purpose for the conditions is to keep the Attorney General apprized of the availability of the alien for departure. Since this monitoring may become a lifelong condition, the conditions must be the minimum needed to assure availability for deportation. Further, the conditions must be reasonable and capable of being modified for the alien to satisfy them.
The INS has a system in place to monitor compliance, and there is no reason that the INS should not handle the routine responsibilities of supervision. If a released Petitioner violates any conditions of his or her release, the INS may request the United States Attorney to prosecute the violations either as criminal contempt under 18 U.S.C. § 402 or a criminal act under 8 U.S.C. § 1253(b). Since both 18 U.S.C. § 402 and 8 U.S.C. § 1253(b) provide the method of punishment, further indefinite detention by the INS is unwarranted.

*1103 APPENDIX
 98-0899 (RZ)
 98-5034 (EE)
 98-5826 (MAN)
 98-6223 (BQR)
 98-7864 (RZ)
 98-8566 (MAN)
 98-8505 (RZ)
 98-8898 (AIJ)
 98-8900 (AIJ)
 98-9997 (RZ)
 98-10206 (EE)
 99-0370 (RC)
 99-1083 (RZ)
 99-2853 (AJW)
 99-2854 (AJW)
 99-2909 (AJW)
 99-2962 (MAN)
 99-3041 (AJW)
 99-3187 (EE)
 99-3577 (MAN)
 99-3602 (EE)
 99-3603 (EE)
 99-4745 (AJW)
 99-4746 (AJW)
 99-4748 (RZ)
 99-4827 (EE)
 99-4828 (AJW)
 99-4831 (RZ)
 99-4908 (RZ)
 99-5112 (EE)
 99-5113 (EE)
 99-5114 (RZ)
 99-5116 (AJW)
 99-5117 (AJW)
 99-5119 (AJW)
 99-5120 (EE)
 99-5121 (RZ)
 99-5291 (EE)
 99-5292 (RC)
 99-5295 (RZ)
 99-5319 (EE)
 99-5326 (RZ)
 99-5327 (RZ)
 99-5328 (RZ)
 99-5377 (RZ)
 99-5860 (MAN)
 99-6851 (AJW)
 99-6961 (RZ)
 99-6962 (RZ)
 99-6974 (RZ)
 99-6975 (RZ)
 99-6976 (RZ)
 99-7451 (RZ)
 99-7910 (BQR)
 99-7913 (RZ)
 99-7914 (EE)
 99-7915 (AJW)
 99-7916 (RZ)
 99-7918 (RZ)
 99-7919 (AJW)
 99-7920 (EE)
 99-8004 (RZ)
 99-8013 (JWJ)
 99-8014 (AJW)
 99-8015 (RC)
 99-8157 (MAN)
 99-8158 (MAN)
 99-8225 (RZ)
 99-8226 (AJW)
 99-8604 (RZ)
 99-8605 (AJW)
 99-8814 (EE)
*1104 99-8815 (RZ)
 99-8816 (AJW)
 99-8817 (RZ)
 99-8829 (BQR)
 99-8830 (RZ)
 99-9791 (MAN)
 99-9944 (RZ)
 99-10073 (MAN)
 99-10066 (RC)
 99-10067 (EE)
 99-10068 (EE)
 99-10069 (RZ)
 99-10070 (RZ)
 99-10071 (RZ)
 99-10072 (RZ)
 99-10075 (EE)
 99-10076 (RC)
 99-10077 (RC)
 99-10079 (CT)
 99-10080 (JWJ)
 99-10081 (EE)
 99-10131 (RZ)
 99-10135 (RZ)
 99-10144 (MN)
 99-10153 (MAN)
 99-10166 (CW)
 99-10168 (CW)
 99-10170 (EE)
 99-10171 (EE)
 99-10824 (RZ)
 99-10861 (RZ)
 99-12109 (RC)
 99-12686 (RZ)
 99-12687 (MAN)
 99-12688 (RC)
 99-12689 (AN)
 99-12720 (RZ)
 99-12721 (RC)
 99-12722 (AJW)
 99-12723 (RZ)
 99-12724 (EE)
 99-12725 (RC)
 99-12787 (RZ)
 99-12788 (RZ)
 99-12789 (MAN)
 99-12790 (MAN)
 99-12791 (RZ)
 99-12792 (JWJ)
 99-12793 (MAN)
 99-12794 (RZ)
 99-12795 (RZ)
 99-12796 (CW)
 99-12797 (MAN)
 99-12802 (RZ)
 99-12803 (RZ)
 99-12804 (RZ)
 99-12805 (RZ)
 99-12806 (RZ)
 99-12807 (AJW)
 99-12808 (RZ)
 99-12874 (JWJ)
 99-13533 (JWJ)