312 F.3d 1145
 Jerry Richard JENSEN, Plaintiff-Appellant,
v.
LANE COUNTY; Richard Sherman, individually and in his official capacity; Peacehealth, a non-profit corporation of the State of Washington; Sacred Heart General Hospital; Douglas Putschler, Defendants, and
Jeffrey M. Robbins, M.D., Defendant-Appellee.
 No. 01-35566.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted September 10, 2002.
 Filed December 11, 2002.
 
 Pamela A. Harrison, Harrison & Pease, Eugene, OR, for the plaintiff-appellant.
 Ruth Casby Rocker, Hoffman, Hart & Wagner, Portland, OR, for the defendant-appellee.
 Appeal from the United States District Court for the District of Oregon; John P. Cooney, Magistrate Judge, Presiding. D.C. No. CV-96-06101-CO.
 Before GOODWIN, GRABER, and FISHER, Circuit Judges.
 OPINION
 GOODWIN, Circuit Judge.
 
 
 1
 This is the second appeal in Jerry Jensen's 42 U.S.C. § 1983 action for damages against a contract psychiatrist who signed an order authorizing the detention of Jensen for mental health evaluation pursuant to Oregon Revised Statute § 426.232.
 
 
 2
 In the first appeal, we held that Dr. Robbins was a state actor and that he was not entitled to qualified immunity, contrary to the district court's conclusions, and reversed the summary judgment in favor of Dr. Robbins. On remand, both parties again moved for summary judgment on a ground not reached in the earlier proceedings: Whether Dr. Robbins, acting pursuant to the Oregon statutory procedure in such cases, had properly exercised professional judgment in permitting Jensen's detention to continue while the evaluation took its course. On undisputed facts, the case turned on a question of law. The district court, finding no Ninth Circuit case on the question, relied on Rodriguez v. City of New York, 72 F.3d 1051 (2d Cir.1995). We affirm the judgment.
 
 
 3
 On this appeal, Jensen has conceded that his original arrest and referral for a mental health evaluation were based upon probable cause. Cf. Maag v. Wessler, 960 F.2d 773, 775-76 (9th Cir.1992) (per curiam) (holding under the 4th Amendment that seizure of the mentally ill is analogous to a criminal arrest and must be supported by probable cause). Jensen was arrested after a citizen called the police and reported a man driving erratically and brandishing a pistol. He also concedes that he is not claiming that the Oregon mental health statutes are unconstitutional. Accordingly, his remaining claim rests on his argument that Dr. Robbins violated due process by failing to order his release from the mental-health detention two days earlier than the day on which Jensen was released.
 
 
 4
 Dr. Robbins is an Oregon-licensed physician. He acted at all times material in this case, in his professional capacity, providing professional services to the Lane County agency dealing with mental health and emergency detention for evaluation. The conditions under which Jensen came to the attention of Dr. Robbins fully warranted a temporary hold for evaluation, as noted in our earlier decision in this case, and as Jensen now concedes. See Jensen v. Lane County, 222 F.3d 570 (9th Cir.2000). The only claim Jensen pursued after the case was returned to the district court was that, two days before Jensen was released, Dr. Robbins had formed an opinion that Jensen was not psychotic and no longer required detention. Jensen claims that this bureaucratic delay was caused by Dr. Robbins' "conscious indifference amounting to gross negligence."
 
 
 5
 That the involuntary five-day hold implicated Jensen's due process rights is beyond dispute. Courts repeatedly have echoed the Supreme Court's admonition that involuntary civil commitment to a mental hospital represents a "massive curtailment of liberty" and that such a commitment therefore must comport with the requirements of due process. Vitek v. Jones, 445 U.S. 480, 491-92, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (citation and internal quotation marks omitted); United States v. Budell, 187 F.3d 1137, 1141 (9th Cir.1999) (same). The question in this case is whether Jensen's five-day emergency hold satisfied the requirements of due process. The answer turns on precisely what process is due in the context of a short-term emergency hold.
 
 
 6
 In general, due process precludes the involuntary hospitalization of a person who is not both mentally ill and a danger to one's self or to others. O'Connor v. Donaldson, 422 U.S. 563, 575, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). The Supreme Court has held that, to support a long-term involuntary commitment, the state must prove both mental illness and dangerousness by more than a preponderance of the evidence, but not beyond a reasonable doubt. Addington v. Texas, 441 U.S. 418, 432-33, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). Following Addington, we have held that in the context of a short-term nonemergency hold, the state must prove mental illness and imminent dangerousness beyond a mere preponderance of the evidence. Suzuki v. Yuen, 617 F.2d 173, 178 (9th Cir.1980).
 
 
 7
 In the context of a short-term emergency hold, however, by definition there is no prior adjudication of the detainee's condition, because the very purpose of the hold is to evaluate whether the person is mentally ill and dangerous and thus should be subjected to such an adjudication. The question then becomes what degree of certainty a doctor must possess that an individual is both mentally ill and dangerous before the doctor may order or continue an involuntary, short-term emergency commitment.
 
 
 8
 The Second Circuit faced that question in Rodriguez. The Rodriguez court held that due process does not require certainty on the part of the doctor, and that the clear-and-convincing standard of proof does not apply to the decision whether to order an involuntary, short-term emergency commitment. 72 F.3d at 1062. The court ultimately decided, however, that "due process ... does demand that the decision to order an involuntary emergency commitment be made in accordance with a standard that promises some reasonable degree of accuracy." Id. The New York statute governing involuntary commitment already had "been held facially sufficient to meet the requirements of due process." Id. (relying on Project Release v. Prevost, 722 F.2d 960 (2d Cir.1983)). The court found it particularly significant that the statute, "consistent with substantive due process," required the committing physicians to make a "medical judgment" that "the patient's alleged mental illness be likely to result in serious harm to himself or others." Id. at 1062-63 (citation and internal quotation marks omitted). In addition, the court held that the physicians had to follow "the standards of the medical profession" in making their judgments about holding a person for evaluation. Id. at 1063.
 
 
 9
 Though committing physicians are not expected to be omniscient, the statute implicitly requires that their judgment— affecting whether an individual is to be summarily deprived of her liberty—be exercised on the basis of substantive and procedural criteria that are not substantially below the standards generally accepted in the medical community. Due process requires no less.
 
 
 10
 Id. (emphasis added). We find the Rodriguez formulation of the due process standard in the context of an involuntary, short-term emergency commitment to be persuasive, and we adopt it.
 
 
 11
 We next determine whether there is evidence in the record that would allow a reasonable finder of fact to decide that Dr. Robbins violated that standard in making his decision to continue to hold Jensen for the final two days of his detention. As noted, Jensen concedes that the Oregon statute is facially constitutional and that the initial decision to place him in an emergency hold comported with due process.[1] Only if Dr. Robbins failed to conform to generally accepted medical standards in continuing the hold for the final two days would Jensen's due process rights be violated.
 
 
 12
 There is no evidence to support Jensen's contention that Dr. Robbins had firmly determined that Jensen was not mentally ill before the final two days of detention, nor is there evidence to support an allegation that Dr. Robbins's conduct failed to meet generally accepted standards of medical practice. Lane County's procedure in such cases employed a mental health team of which the private contract psychiatrist was only one member. Under the statute, a temporary emergency mental health detention could last for a period "not to exceed five court days." During the second and third day of Jensen's custody, other members of the team consulted and exchanged views on the Jensen case. (Some of them were also named as defendants in this case but were exonerated by the jury after Dr. Robbins had been eliminated by the first summary judgment.)
 
 
 13
 As the district court noted, Dr. Robbins was familiar with, and his conduct conformed to, the professional standards for involuntary admission to a mental health facility and for retention while the person's mental condition is evaluated. Jensen offered no expert medical evidence to the contrary. The evidence of Jensen's behavior at the time of his arrest, his use of a firearm, and symptoms of abuse of alcohol and probable paranoid disorder was undisputed. There was no evidence that Dr. Robbins had any personal motive to treat Jensen differently than any other person assigned to him for examination by the county's mental health team and no showing of intentional delay, bad faith, or malice.
 
 
 14
 In this case, the district court held that Dr. Robbins was entitled to summary judgment as a matter of law because the undisputed evidence showed that he had exercised his professional judgment according to the generally accepted standards of the medical community. Jensen failed to present evidence sufficient to create a triable issue that Dr. Robbins departed from these standards in deciding to prolong Jensen's detention for two more days.
 
 
 15
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 Under the relevant Oregon statute, the physician must believe before commencing an emergency hold that the person to be detained "is dangerous to self or to any other person and is in need of emergency care or treatment for mental illness." Or.Rev.Stat. § 426.232. If the person is to be detained in a hospital as opposed to a "nonhospital facility," the physician must also consult with another physician or qualified mental health professional before commencement of the holdId.