PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4728
_____

UNITED STATES OF AMERICA

v.

JOAQUIN FOY
a/k/a Isa El-Mahde

Joaquin Foy,
        Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 2-03-cr-00393-001)
Honorable Eduardo C. Robreno, District Judge

_____

Submitted under Third Circuit LAR 34.1(a)
March 27, 2015

BEFORE:  GREENAWAY, JR., KRAUSE, and
GREENBERG, Circuit Judges

(Opinion Filed:  October 5, 2015)

_____

Mary Gibbons
600 Mule Road
Toms River, NJ 08757

    Attorney for Appellant

Zane David Memeger
United States Attorney
Robert A. Zauzmer
Assistant United States Attorney
Chief of Appeals
Kathy A. Stark
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

    Attorneys for Appellee

_____

OPINION OF THE COURT

_____

GREENBERG, <u>Circuit</u> <u>Judge</u>.


## I.  INTRODUCTION

Joaquin Foy appeals from an order entered by the District Court in the Eastern District of Pennsylvania on December 7, 2010, denying his motion filed under Fed. R. Civ. P. 60(d)(3) on November 18, 2010, seeking to vacate an order of civil

commitment pursuant to which he was confined at that time and thus requesting that he be released. Although the Eastern District Court previously had issued temporary orders committing Foy, when he filed his motion and the Court denied it, Foy's commitment was pursuant to an order of the District Court for the Western District of Missouri. Accordingly, we conclude that the Eastern District Court lacked jurisdiction over Foy's motion, and we therefore will vacate the order denying the motion and remand the case to that Court for it to consider transferring the motion to the Western District of Missouri, and if it does not so to dismiss the motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

We trace this case to September 30, 2003, when the government filed a complaint in the Eastern District of Pennsylvania charging Foy with threatening a federal official in violation of 18 U.S.C. § 115(a)(1)(B).[1] Shortly thereafter, on the basis of the same conduct alleged in the criminal complaint, the government filed a petition in the Eastern District of Pennsylvania seeking revocation of a sentence of probation that a district court in the Southern District of Texas had imposed on him. The Eastern District Court conducted a hearing to determine Foy's mental competency to stand trial on the criminal complaint and found that Foy was suffering from a mental disease or defect that rendered him incapable of assisting

---

[1] There have been many proceedings relating to this competency matter in various district courts in addition to those that we describe in this opinion, but we limit our discussion to the ones germane to our disposition of this case.

in his defense.  It therefore committed him for a period of 120 days beginning on October 24, 2003, the date of the order, to the custody of the Attorney General pursuant to 18 U.S.C. § 4241(d), which authorizes temporary hospitalization of a mentally incompetent defendant for a reasonable period of time, not to exceed four months, to determine whether the defendant might attain the necessary capacity for criminal proceedings to continue and for an additional period of time until either the defendant's mental condition improves or the pending charges against him are disposed of according to law.  Following entry of that order, the government transferred Foy to the Federal Medical Center at Butner, North Carolina ("FMC Butner").  On February 7, 2005, the Eastern District Court found that Foy continued to be incompetent so that he could not stand trial, and further concluded that there was not a substantial probability that he would attain that level of competency in the foreseeable future.

Having made those determinations, the Eastern District Court ordered the warden at FMC Butner to assess Foy's dangerousness and decide whether to institute civil commitment proceedings with respect to him pursuant to 18 U.S.C. § 4246(a).  Over the next several months, the Court ordered additional assessments of Foy's dangerousness in light of new information and, in a particularly significant order, on September 19, 2005, the Court entered an order stating that Foy "shall be committed to the custody of the Bureau of Prisons for reevaluation of his dangerousness pursuant to 18 U.S.C. § 4246(a)."  App. at 78.  Subsequently, the Court directed the parties to agree on a date for a hearing to address Foy's dangerousness, but, before the Court held this hearing, the government moved to dismiss the Eastern District criminal complaint against Foy by reason of his mental condition.  The

4

Court granted this motion on December 19, 2005, and dismissed the complaint. More than three years later on January 9, 2009, the Eastern District Court terminated Foy's probation included in the sentence imposed in the earlier prosecution in the Southern District of Texas.

Prior to the Eastern District Court dismissing the criminal complaint, the government transferred Foy to the United States Medical Center for Federal Prisoners in Springfield, Missouri, in the Western District of Missouri. On December 16, 2005, the Springfield warden certified pursuant to § 4246(a) that Foy was suffering from a mental disease or defect so that his release would pose a substantial risk of bodily injury or serious property damage to another and that suitable arrangements for state custody were not available. Accordingly, on December 21, 2005, two days after the Eastern District Court dismissed the criminal complaint against Foy, the government filed a petition pursuant to § 4246 in the Western District of Missouri, seeking a hearing on Foy's dangerousness.

Foy moved to dismiss the Western District petition, arguing that the Eastern District of Pennsylvania had lacked jurisdiction when it ordered his reevaluation under § 4246(a) when he was confined at FMC Butner. The District Court in the Western District of Missouri ruled on the motion in an opinion of May 9, 2007, stating:

> A review of the records and files in this case clearly establishes that in its order of September 19, 200[5], the United States District Court for the Eastern District of Pennsylvania did not order defendant committed under the provisions of § 4246, but rather ordered that the

5

Bureau of Prisons reassess whether a § 4246 petition was appropriate. After that reassessment occurred, the instant petition was properly filed in this court.

App. at 119. The Western District of Missouri subsequently held a hearing to ascertain Foy's dangerousness, if any, and on September 12, 2007, ordered Foy committed pursuant to § 4246(d). Foy appealed, but the Court of Appeals for the Eighth Circuit affirmed.

As required by 18 U.S.C. § 4247(e)(B), the Springfield medical facility thereafter sent to the district court in the Western District of Missouri annual reports concerning Foy's mental condition and its recommendations regarding his need for continued commitment. Insofar as reflected in the record before us, since 2009 these reports have recommended Foy's conditional release. However, notwithstanding these recommendations, Foy has not been released because he refuses to accept possible conditions on his release.

Rather than accept a conditional release, Foy has sought to be released unconditionally by instituting proceedings in both the Western District of Missouri and the Eastern District of Pennsylvania.[2] Thus, on August 5, 2010, Foy filed a habeas corpus petition in the Eastern District of Pennsylvania seeking his release pursuant to 28 U.S.C. § 2241, but that Court

---

[2] He also has sought relief in the Eastern District of North Carolina and, inasmuch as he had been transferred to the Federal Medical Center in Rochester, Minnesota, in the District of Minnesota. See, e.g., Foy v. U.S. Gov't, Civ. No. 15-1901, 2015 WL 2131410 (D. Minn. May 7, 2015).

6

transferred the petition to the Western District of Missouri on August 18, 2010. The Western District of Missouri dismissed the petition with prejudice and, on Foy's appeal, the Court of Appeals for the Eighth Circuit affirmed the order of dismissal. Then, on September 4, 2014, counsel filed a motion on Foy's behalf in the Western District of Missouri seeking an order for Foy's discharge pursuant to 18 U.S.C. § 4247(h). That court held a hearing on the motion at which Foy testified and was represented by counsel. The court denied the motion on October 21, 2014.

As the foregoing proceedings in the Western District of Missouri unfolded, Foy initiated pro se proceedings in the Eastern District Court seeking to secure his release. First, on July 8, 2010, he filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Because Foy did not use the standard form then in use for such a motion in that district, the Court directed its clerk to furnish Foy with that form, which contains information regarding the consequence of filing such a motion. The Eastern District Court eventually dismissed the motion because Foy failed to submit the form within the time it had afforded him.

After he filed the § 2241 habeas corpus petition to which we refer above, Foy, on November 18, 2010, filed a pro se pleading entitled "Motion to Vacate Judgment of Civil Commitment Rule 60(d)(3) Fed. R. Civ. P." in the Eastern District seeking his immediate release. App. at 4. The Eastern District Court denied the November 18, 2010 motion on December 7, 2010, and Foy appealed, bringing the case to us. A panel of this Court appointed counsel for Foy and, by order dated March 28, 2011, directed the parties to discuss at least the following issues:

7

(1) whether Foy's 'Motion to vacate judgment of civil commitment pursuant to Rule 60(d)(3) Fed. R. Civ. P.' can be considered (a) a Rule 60(b) motion, (b) an attempt to seek habeas relief, and/or (c) a motion pursuant to 18 U.S.C. § 4246(e) for discharge from confinement or for a hearing; (2) whether, if Foy's motion includes a plea for habeas relief, (a) he proceeds under 28 U.S.C. § 2255, 28 U.S.C. § 2241, or some other provision, and (b) whether the avenue under which he proceeds is available to him generally, see United States v. Budell, 187 F.3d 1137, 1141 & n.9 (9th Cir. 1999); see also Phelps v. United States Fed. Gov't, 15 F.3d 735, 737 (8th Cir. 1994), and/or in the District Court for the Eastern District of Pennsylvania, see Rumsfeld v. Padilla, 542 U.S. 426, 447[, 124 S.Ct. 2711, 2724] (2004); (3) whether, if Foy was seeking habeas relief and could not do so in the District Court for the Eastern District of Pennsylvania, the District Court should have transferred his filing in the interest of justice, see 28 U.S.C. § 1631; and (4) whether the dictates of 18 U.S.C. § 4246(e) have been followed in this case in the District Court.

App. at 3. The parties capably addressed these issues in their briefs. We now adjudicate the matter.

## III. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291 as the

8

Eastern District Court's denial of Foy's request for release from civil commitment fully resolved the litigation before it. See Bryan v. Erie Cnty. Office of Children & Youth, 752 F.3d 316, 320-21 (3d Cir. 2014); Penn W. Assocs., Inc. v. Cohen, 371 F.3d 118, 123-24 (3d Cir. 2004). Though the Eastern District proceedings did not preclude Foy from later moving for discharge under 18 U.S.C. § 4247(h), that possibility does not undermine the finality of the Eastern District Court's order. See United States v. Stewart, 452 F.3d 266, 272-73 (3d Cir. 2006).

Of course, our jurisdiction over this appeal does not establish that the Eastern District Court had jurisdiction in the first place. Accordingly, the government has been free to contend that the District Court did not have jurisdiction over Foy's motion for release, and it does exactly that. In considering that contention, we exercise plenary review. See Bryan, 752 F.3d at 321 n.1. Because Foy filed his motion pro se, we construe it liberally and consider not only the Rule 60(d) label that he attached to it but any other bases that could have given the Eastern District Court jurisdiction over the motion. See United States v. Miller, 197 F.3d 644, 647-48 (3d Cir. 1999). If, after doing so, we conclude that the Eastern District Court lacked jurisdiction, we must direct it to dismiss Foy's motion without addressing the merits of the case or transfer the case to the Western District of Missouri pursuant to 28 U.S.C. § 1631. See Babcock & Wilcox Co. v. Kan. City S. Ry. Co., 557 F.3d 134, 137 (3d Cir. 2009).

## IV. DISCUSSION

When a panel of this Court originally reviewed this appeal it discerned five possible bases for the Eastern District

9

Court to have had jurisdiction over Foy's request for release in his November 18, 2010 motion, and, as we have explained, it directed the parties to address them in their briefs and they have done so: (1) 18 U.S.C. § 4247(h)[3]; (2) Fed. R. Civ. P. 60(b); (3) Fed. R. Civ. P. 60(d); (4) 28 U.S.C. § 2255; and (5) 28 U.S.C. § 2241. We address these bases in turn and conclude that none of them afforded the Eastern District Court jurisdiction to determine if it should grant Foy's motion for release from civil commitment. We further conclude that we should remand the case to the Eastern District Court to determine whether that Court should transfer the case pursuant to 28 U.S.C. § 1631 to a different court that would have had jurisdiction over Foy's request for release, i.e., the Western District of Missouri.

## A. 18 U.S.C. § 4247(h)

Foy primarily argues on this appeal that his motion for release should be treated as a motion for discharge under 18 U.S.C. § 4247(h). Section 4247(h) authorizes a committed individual to file a motion for a hearing to determine whether he should be discharged from the commitment facility. However, the motion may be filed only "during such person's

---

[3] The panel's order to the parties regarding which issues to discuss referenced § 4246(e), rather than § 4247(h). However, unlike § 4247(h), § 4246(e) applies only when the director of the commitment facility files a certificate attesting that the committed individual has recovered to the extent that the individual's release no longer would pose a substantial risk of bodily injury or serious property damage to another. Given that Foy concedes that this triggering event did not occur, see appellant's br. at 44 n.13, we consider instead the possibility for relief under § 4247(h).

commitment" with "the court that ordered the commitment." 18 U.S.C. § 4247(h); see Archuleta v. Hedrick, 365 F.3d 644, 649 (8th Cir. 2004) ("Archuleta is in custody by reason of a commitment order issued by the District of Utah. Only that court . . . may grant the statutory relief he seeks, either conditional or unconditional release."); United States v. Budell, 187 F.3d 1137, 1142 (9th Cir. 1999) (stating that committed individuals "will remain hospitalized until ordered discharged by the court that ordered the commitment"). Accordingly, Foy could not bring his § 4247(h) motion in the Eastern District of Pennsylvania because when he filed the motion and, indeed, when the Court denied it, he was committed pursuant to the September 12, 2007 order of the Western District of Missouri.

Foy contends that the Eastern District Court had jurisdiction based on its September 19, 2005 order that Foy "shall be committed to the custody of the Bureau of Prisons for reevaluation of his dangerousness pursuant to 18 U.S.C. § 4246(a)." App. at 78. But as the Western District of Missouri noted, when the Eastern District Court entered that order, it "did not order [Foy] committed under the provisions of § 4246, but rather ordered that the Bureau of Prisons reassess whether a § 4246 petition was appropriate." Id. at 119. Unlike the Western District of Missouri, the Eastern District Court has not issued a final order of commitment with respect to Foy pursuant to § 4246(d). Moreover, when Foy filed his motion under Rule 60(d)(3) on November 18, 2010, he no longer was committed under the Eastern District Court's temporary order of commitment of September 19, 2005. In authorizing a committed individual to file a motion for discharge "during such person's commitment" with "the court that ordered the commitment," § 4247(h) offers an avenue for relief only in the court that ordered the commitment under which the petitioner was committed

11

when he filed his petition.  See Archuleta, 365 F.3d at 649.

Our foregoing analysis makes clear that the Eastern District Court's earlier, no longer applicable order of temporary commitment, did not afford it with jurisdiction to entertain Foy's challenge to his confinement at the time he filed his November 18, 2010 motion.  Cf. United States v. Baker, 807 F.2d 1315, 1325 (6th Cir. 1986) (holding that, notwithstanding its decision to vacate district court's commitment order, court of appeals lacked jurisdiction to order release of defendant because subsequent proceedings had been initiated with respect to him under § 4246(a) in district of defendant's confinement, thereby staying his release); United States v. Hardy, 770 F. Supp. 2d 410, 412-13 (D. Me. 2011) (rejecting argument that court's earlier order of commitment under § 4241(d) provides it with continuing jurisdiction to initiate dangerousness evaluation after that commitment has ended).

B.      Fed. R. Civ. P. 60(b), (d)

Foy's attempt to assert jurisdiction based on Fed. R. Civ. P. 60(b) or (d) fails for similar reasons.  Rule 60(b) authorizes a party to move for relief from a final judgment, order, or proceeding based on various specified grounds, including, as Foy contends is applicable here, because "applying the [the judgment] prospectively is no longer equitable" or for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(5), (6).  Rule 60(d) is a savings clause, clarifying that Rule 60 does not limit a court's power, among other things, to "entertain an independent action to relieve a party from a judgment, order, or proceeding."  Fed. R. Civ. P. 60(d)(1); see Jackson v. Danberg, 656 F.3d 157, 166 (3d Cir. 2011) ("Rule 60(d) permits a court to entertain an independent action to relieve a party from a

12

judgment in order to 'prevent a grave miscarriage of justice.'" (quoting United States v. Beggerly, 524 U.S. 38, 47, 118 S.Ct. 1862, 1868 (1998))).[4] Nevertheless, Rule 60 by itself does not vest a district court with jurisdiction to consider such a motion or independent action. See Fed. R. Civ. P. 82 ("These rules do not extend or limit the jurisdiction of the district courts or the venue of actions in those courts."); Palkow v. CSX Transp., Inc., 431 F.3d 543, 555 (6th Cir. 2005) (stating that district court required "an independent statutory basis" to exercise jurisdiction over claim framed as Rule 60 motion or independent action).

Ordinarily, it would be clear that a district court would have jurisdiction over a Rule 60 motion or an independent action seeking relief from a judgment because the court will have ancillary jurisdiction to consider a challenge to its own judgment or order. See Beggerly, 524 U.S. at 46, 118 S.Ct. at 1867 (citing Pac. R.R. of Mo. v. Mo. Pac. Ry. Co., 111 U.S. 505, 522, 4 S.Ct. 583, 592 (1884)) ("The Government is . . . wrong to suggest that an independent action brought in the same court as the original lawsuit requires an independent basis for jurisdiction."); Budget Blinds, Inc. v. White, 536 F.3d 244, 251 (3d Cir. 2008) ("The power of a court to invoke Rule 60(b) to vacate its own earlier judgment is unquestioned."). Foy attempts to rely on this basis for jurisdiction, pointing to the initiation of commitment proceedings under 18 U.S.C. § 4246 in the Eastern District Court and its September 19, 2005 order committing him for a reassessment of his dangerousness. As discussed above, however, the commitment order under which

---

[4] Foy's pro se motion cited Rule 60(d)(3), which preserves a court's power to "set aside a judgment for fraud on the court," but his brief frames his motion as attempting to assert an independent action as authorized by Rule 60(d)(1).

Foy was confined when he filed his November 18, 2010 motion, and therefore the order from which he sought relief in asking for his immediate release, had been issued in the Western District of Missouri, not by the Eastern District Court.

We emphasize that the Eastern District Court's earlier order of temporary commitment did not provide it with jurisdiction to revisit a distinct order of commitment entered by a different court. See Baker, 807 F.2d at 1325. Though we recognize that there may be circumstances in which a district court has jurisdiction over a Rule 60 motion or an independent action seeking relief from a judgment entered by another court, such as where a party to initial proceedings registers a judgment obtained in another court pursuant to 28 U.S.C. § 1963, see Budget Blinds, 536 F.3d at 251-54, 254 n.12, Foy does not point to such an independent ground for jurisdiction here.[5]

---

[5] Of course, the Eastern District Court would have had jurisdiction over a challenge to its September 19, 2005 order of temporary commitment, but such jurisdiction would not have authorized it to order Foy's release from his current commitment, the identified aim of his pro se motion. Though we do not reach a conclusion on the point as we have no need to do so, we recognize that arguably the Eastern District Court lacked authority to initiate the preliminary § 4246 commitment proceedings because it was not "the court for the district in which [Foy was] confined" when the Court entered the order as he was confined in FMC Butner at that time. 18 U.S.C. § 4246(a); see, e.g., United States v. Charters, 863 F.2d 302, 314 (4th Cir. 1988) (en banc); Baker, 807 F.2d at 1324; United States v. Steil, 753 F. Supp. 806, 808-09 (D. Minn. 1989). But see United States v. Godinez-Ortiz, 563 F.3d 1022, 1032 (9th Cir. 2009) (holding that district court in Southern District of

14

### C.     28 U.S.C. §§ 2255 and 2241

Foy correctly concedes that the other two suggested grounds for Eastern District jurisdiction that we set forth in our March 28, 2011 order are inapplicable.  He cannot rely on 28 U.S.C. § 2255, which authorizes a "prisoner in custody under sentence" to challenge the sentence, because he currently is not serving a sentence.  See Archuleta, 365 F.3d at 648 (stating civilly committed individual not eligible for relief under § 2255); Budell, 187 F.3d at 1141 (same).  Nor can Foy frame his request for release as a habeas corpus petition under 28 U.S.C. § 2241 as he only could pursue such relief in the district in which he was confined, and when he filed the motion leading to the order now on appeal he was not confined in the Eastern District of Pennsylvania.  See Rumsfeld v. Padilla, 542 U.S. 426, 447, 124 S.Ct. 2711, 2724 (2004) ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement.").  Thus, regardless of how we frame Foy's request for release, the Eastern District Court should not have considered it on the

---

California acted within its authority in temporarily returning defendant to North Carolina medical facility for that facility to evaluate defendant's dangerousness and decide whether to issue certificate of dangerousness pursuant to § 4246); United States v. Wheeler, 744 F. Supp. 633, 635, 639-40 (E.D. Pa. 1990).  But even if we concluded that the Eastern District Court erred in initiating such proceedings our conclusion would not invalidate the Western District of Missouri's separate § 4246 proceedings and its resulting order of commitment.  See Baker, 807 F.2d at 1325.

15

merits if it did so.

### D. Transfer Pursuant to 28 U.S.C. § 1631

Our determination that the Eastern District Court did not have jurisdiction leaves open the question of whether this case should be transferred pursuant to 28 U.S.C. § 1631 to the Western District of Missouri as that court would have jurisdiction to entertain the motion.[6] We do not know whether the Eastern District Court considered that possibility because the Court in its order of December 7, 2010, denying Foy's motion of November 18, 2010, seeking his immediate release did not give an explanation denying the motion. Accordingly, we do not know if the Eastern District Court denied the motion because it believed that it did not have jurisdiction or because it determined that the motion was not meritorious. In the circumstances, we will remand the matter to the Eastern District Court to consider whether to transfer the case to the Western District of Missouri.[7]

---

[6] Of course, Foy contends that the Eastern District Court had jurisdiction so a transfer was not necessary.

[7] Though we ordinarily might not comment on the merits of the transfer issue and simply would remand the case to the Eastern District Court to consider whether to transfer the case to the Western District of Missouri we will comment on the merits in view of Judge Krause's partial dissent. We point out initially that Foy refuses to accept conditions on his release, even though he could have been released as early as 2009 if he had been willing to do so. Although Judge Krause indicates that conditions on Foy's release could be enforced even if he does not consent to them, Foy's refusal to agree to such conditions

16

signals that he would not regard himself as bound by them and forewarns of trouble to come if he is released. Moreover, if he does not abide by the conditions of release there could be serious consequences before steps could be taken to enforce the conditions. In this regard, Foy's Rule 60 motion sought nothing less than his immediate and unconditional release from custody. Given Foy's sole aim of securing immediate and unconditional release and his unwillingness to accept anything less, arguably "the interests of justice [would be] best served by terminating this litigation because its continuation wastes judicial resources while moving [him] no closer to [his] goal." LeBlanc v. Holder, 784 F.3d 206, 210 (4th Cir. 2013).

Moreover, it seems clear that it would be a futile waste of judicial and party resources to transfer the case to the Western District of Missouri as within the last year on October 21, 2014, that court denied Foy the relief he seeks here. See Campbell v. Office of Pers. Mgmt., 694 F.2d 305, 309 n.6 (3d Cir. 1982). Moreover, the interest of justice does not require a transfer here to protect Foy's rights because if Foy changes his mind regarding his desired relief, a determination that the Eastern District Court did not have jurisdiction would not pose an obstacle to him if he initiates a new case as § 4247(h) authorizes committed individuals to file successive motions for discharge and the government has the ongoing duty to seek a conditional release or placement for him in a state facility. The situation here therefore differs from a case where a transfer is necessary to preserve a litigant's substantive interests, such as would be the situation when a statute of limitations has run so that if the litigant is required to institute a new proceeding to seek relief, his complaint would be subject to dismissal as untimely.

17

## V. CONCLUSION

For the foregoing reasons, we will vacate the District Court's order entered on December 7, 2010, denying Foy's Rule 60 motion and will remand the case to the Eastern District Court for it to consider whether to transfer the case to the Western District of Missouri. If the Eastern District Court does not transfer the case it should dismiss the motion for lack of jurisdiction. The parties will bear their own costs on this appeal.

KRAUSE, *Circuit Judge*, concurring in part and dissenting in part:

Joaquin Foy's case is nothing short of Kafkaesque and cries out to be heard by some court of competent jurisdiction. Despite not having stood trial and not having been convicted of a crime, Foy has been confined in federal penal institutions continuously since 2003. For the last six of these years, Foy's civil commitment under the Insanity Defense Reform Act of 1984 ("IDRA"), 18 U.S.C. §§ 17, 4241-47, has continued despite the fact that a panel of experts repeatedly has recommended that he be released because he poses no danger to others if released under a prescribed regimen of care, and despite the fact that the IDRA expressly provides in such circumstances that a court "shall . . . order that [the individual] be conditionally discharged under a prescribed regimen of medical, psychiatric, or psychological care or treatment." 18 U.S.C. § 4246(e)(2)(A). Foy has also raised serious concerns that the Government has not complied with the statutory safeguards designed to prevent indefinite federal incarceration under the IDRA, including the requirement that it exert all reasonable efforts to find a suitable placement for Foy in a state facility, such as a group home or similarly less restrictive setting.

For these reasons, while I agree with the majority that the District Court for the Eastern District of Pennsylvania lacked jurisdiction over Foy's motion to vacate his civil commitment and have no doubt that the District Court will carefully consider whether the "interest of justice" standard requires a transfer to a court that does have jurisdiction, I see no reason not to expedite the process by remanding with instructions to transfer, as a transfer in this case is so clearly

1

"in the interest of justice." 28 U.S.C. § 1631. On this point, I respectfully dissent.[1]

---

[1] Although the majority remands for the District Court to decide the question of transfer in the first instance, it oddly proceeds to suggest in dictum that transfer may not be not warranted (1) because Foy is not entitled to the unconditional release he would prefer, but only to conditional release; (2) because, in the majority's view, transfer would be futile as the Western District of Missouri has denied unconditional release in the past; and (3) because the hypothetical possibility remains that Foy could initiate a new action in Missouri and attempt to file a successive motion pro se or through counsel if he can obtain one. Notably, however, the majority does not dispute that, as set forth in detail below, under the IDRA, Foy's conditional release on this record appears to have been *mandatory* and thus to have been unlawfully denied, and Foy has raised compelling statutory and due process arguments here, concerning the Government's imposition of an extra-statutory condition of his express agreement to the conditions of release, that have never been presented to the Western District of Missouri. For these reasons and those described more fully below, the "interest of justice" standard leaves no room for debate that the courts of our Circuit should promptly transfer this action to the Western District of Missouri so that the merits of Foy's substantial claims can be considered without further delay by a court of competent jurisdiction; the matter is recognized by the transferee court as warranting appointment of counsel; and Foy's six-plus years of what appears to be unauthorized detention are not prolonged *indefinitely* by Foy's inability to overcome procedural barriers to successive filings or his inability to present coherent

2

**I.**

Whenever a federal court lacks jurisdiction over a civil action, § 1631 states in mandatory terms that the court "*shall, if it is in the interest of justice, transfer such action*" to another federal court in which the action could have been brought at the time it was filed. 28 U.S.C. § 1631 (emphasis added). This determination may involve undertaking some "limited review of the merits" of the underlying claims. *Phillips v. Seiter*, 173 F.3d 609, 611 (7th Cir. 1999). After all, it is not "in the interest of justice" to transfer a claim that plainly fails. *See Adeleke v. United States*, 355 F.3d 144, 152 (2d Cir. 2004). However, it is clear after reviewing the relevant statutory scheme and the facts of Foy's case that his claims relate to significant potential statutory and constitutional violations and they should be decided by a court that is able to hear them.

Foy's incarceration in federal detention centers under the IDRA began in 2003, when he was found to be incompetent to stand trial for verbally threatening a federal official.[2] Foy was initially incarcerated under 18 U.S.C. §

---

arguments in pro se motions about the very serious issues presented by this case.

[2] The IDRA is phrased in terms of "treatment in a suitable facility," but this "treatment" period has been repeatedly equated to incarceration. *See Henry v. Ciccone*, 440 F.2d 1052, 1054 (8th Cir. 1971) (Clark, J., Associate Justice, United States Supreme Court, sitting by designation) ("Again and again we have recognized that the [federal medical center] is a penal institution and that one confined there suffers incarceration.").

3

4241, which allows federal detention centers to hold criminal defendants for a recovery period while they are temporarily incompetent to stand trial. The IDRA further provides that federal detention may continue under 18 U.S.C. § 4246 at the end of this temporary recovery period if the defendant's mental condition has not improved as to permit the proceedings to go forward. 18 U.S.C. § 4241(d). Thus, in 2005, the District Court ordered that Foy be detained under § 4246 because he was incompetent to stand trial and there was no substantial probability that his competency would be restored in the foreseeable future. Shortly thereafter, it granted dismissal of the sole criminal charge, and the criminal case against Foy was then closed. His detention under § 4246, however, continued.

But ongoing detention under § 4246 after the initial recovery period has elapsed is a last resort—it is only available if a person poses an ongoing danger to others in the "rare circumstances where [he] has no permanent residence or there are no state authorities willing to accept him for commitment." S. Rep. 98-225, at 250 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3432; *see also United States v. Lapi*, 458 F.3d 555, 563 (7th Cir. 2006) (observing that § 4246 is "drafted narrowly" and applies only in rare circumstances). The IDRA therefore contains two important statutory safeguards to prevent indefinite incarceration in a federal facility. First, the ongoing detention must be predicated on the person's dangerousness if released, and, second, the Government has a continuing responsibility to find suitable arrangements for state custody and care. 18 U.S.C. § 4246(a), (d)-(e). Foy alleges that the Government has complied with neither because there is little evidence in the record that it has taken appropriate steps to effectuate an

4

appropriate conditional release for Foy and it has not satisfied its duty even to seek, much less find, a suitable state placement for Foy.

**A.**

Turning to the first of these statutory safeguards, the IDRA requires that the Government file annual reports on a detainee's mental condition to justify his ongoing commitment, 18 U.S.C. § 4247(e)(1)(B), and requires that, when a detainee is no longer dangerous under a prescribed regimen of medical care, the director of the detaining facility must initiate a discharge procedure with the district court, 18 U.S.C. § 4246(e), and the court that ordered the detainee's civil commitment must order his conditional release, 18 U.S.C. § 4246(e)(2)(A). Since 2009, the annual reports by the Risk Assessment Panel at the U.S. Medical Center for Federal Prisoners in Springfield, Missouri have repeatedly concluded that Foy's release *would not create a substantial risk of danger to others or the property of others* with the appropriate medication and care.[3] The Panel therefore has recommended in each of the last five reports available in the record that Foy be conditionally released to a group home or similarly structured entity in the community. Despite these recommendations, the facility holding Foy has not initiated proceedings to release him, and Foy remains detained.

The Government's retort—that it lacks sufficient assurance Foy will fulfill his conditions of release because he wants an unconditional release and is unwilling now to sign a

---

[3] Foy states in his brief, which was not filed under seal, that the annual Risk Assessment Review Reports, which were filed under seal, reach this conclusion. Appellant's Br. 12.

certification of future compliance—seems reasonable enough on first impression. Under inspection, however, it raises serious questions under the IDRA and the Constitution that warrant careful scrutiny by a court of competent jurisdiction.

First, how is predicating Foy's release on his written agreement to the conditions of release permissible given the plain language of the IDRA? The statute states, in mandatory terms, that once the facility director has determined that a detainee will not pose a threat to society if released on a prescribed regimen of medical care, the director "*shall promptly* file a certificate to that effect" with the court that ordered civil commitment, 18 U.S.C. § 4246(e) (emphasis added), and that, following a hearing to confirm the safety of conditional release, "the court *shall* . . . order that [the detainee] be conditionally discharged under a prescribed regimen of medical, psychiatric, or psychological care or treatment." 18 U.S.C. § 4246(e)(2)(A) (emphasis added). The statute does not provide for and hardly seems to leave room for the imposition by a facility of its own requirement that a detainee agree in writing to abide by the conditions of release. *Cf. Shalom Pentecostal Church v. Acting Sec'y U.S. Dep't of Homeland Sec.*, 783 F.3d 156, 167 (3d Cir. 2015) (striking as ultra vires an agency regulation imposing an additional requirement on criteria for entitlement to visa issuance on the ground that such requirement was inconsistent with the plain language of the statute).

Second, why doesn't the IDRA itself squarely resolve the Government's purported concerns that it lacks assurance of Foy's future compliance with the conditions of his release or that those conditions somehow might be unenforceable without Foy's signature on a document? An enforceable court order would seem dispositive on this point, and the

statute here expressly requires not only that the District Court "shall . . . order that [the detainee] be conditionally discharged under a prescribed regimen of medical, psychiatric, or psychological care or treatment," but also that the court "order, *as an explicit condition of release*, that [the detainee] comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment." 18 U.S.C. § 4246(e)(2)(A)-(B) (emphasis added).

Indeed, the position taken by the Government here—that a signed certification is somehow needed to ensure future compliance with the conditions of release—ironically was disavowed by the Government and repeatedly rejected by the courts in the criminal context, where, until its repeal in 1982, 18 U.S.C. §§ 4163-64, provided in similar terms for the mandatory release on specified conditions of inmates who had served their full terms of imprisonment. In subsequent litigation over the enforceability of those conditions against inmates who had refused to sign or challenged the validity of pre-release certifications of compliance, the courts routinely sided with the Government that the absence of a signed form was irrelevant and the conditions were enforceable as part of the statutorily mandated release. *See Robinson v. Willingham*, 369 F.2d 688, 689 (10th Cir. 1966) ("Congress has fixed the conditions attached to a mandatory release and those conditions are not effected by the releasee signing or failing to sign a release agreement."); *Hicks v. Reid*, 194 F.2d 327, 329 (D.C. Cir. 1952) (rejecting petitioner's argument that his failure to sign a document setting forth the conditions of release relieved him of obligation to comply because the statute "not only created the right to release but also imposed

7

conditions thereon" such that "[b]oth are mandatory and neither can be avoided by dissent").[4]

In none of these cases did the inmate's refusal to sign a document agreeing to abide by the conditions of release either provide a basis to delay the release mandated by the terms of the statute or render those conditions of release unenforceable. Nor today, as far as I can ascertain, is it the policy of the Bureau of Prisons to refuse to release an inmate who has served out his term of imprisonment because the inmate is unwilling to sign a written assurance that he will abide by the conditions of his supervised release—even if there is good reason to be concerned that the inmate will violate those conditions upon release. Thus, it may well be that a detainee's "refusal to agree to such conditions signals that he would not regard himself as bound by them and forewarns of trouble to come if he is released." Maj. Op. 15 n.7. But when no such writing is required for the release of a

---

[4] *See also McMillan v. Parker*, 254 F. Supp. 365, 366 (M.D. Pa. 1966), *aff'd*, 378 F.2d 444 (3d Cir. 1967) (per curiam) ("The mere fact that petitioner did not sign the certificate of mandatory release will not relieve him of the conditions imposed on said release. . . . His release was subject to those conditions regardless of whether the certificate was signed or not."); *Donahue v. U.S. Parole Comm'n*, 603 F. Supp. 1310, 1312 (S.D. Fla. 1985) ("Plaintiff's refusal to sign his Certificate of Mandatory Release is irrelevant to his being subject to the terms and conditions enunciated therein. Congress has fixed the conditions attached to a mandatory release and those conditions are not affected by the failure or refusal of the releasee to sign the release agreement.").

8

convicted defendant, a court of competent jurisdiction should consider whether it accords with the IDRA and the Constitution for that extra-statutory precondition to be imposed on civilly committed persons who have not been convicted of any crime.

Third, conditions of release from imprisonment are typically enforced as a consequence that follows from future non-compliance with those conditions, and not through indefinite detention unless and until an inmate commits in writing to abide by those conditions. *See* 18 U.S.C. § 3583(e)(3) (allowing for revocation of supervised release upon a finding that the defendant violated a condition of release). Consistent with this norm, the IDRA by its terms contemplates the possibility of future non-compliance with conditions of release and specifies a single mechanism to enforce those conditions: arrest and revocation of release if the facility to which the individual is released reports that the individual has failed to comply with the conditions. 18 U.S.C. § 4246(f). How then does a facility's prophylactic enforcement—preempting any opportunity for non-compliance by refusing to certify a qualified detainee for conditional release as required under § 4246(e)—comport with either the statute or the Constitution? After all, civilly committed persons remain entitled to due process, *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *Addington v. Texas*, 441 U.S. 418, 425 (1979), and detaining such persons indefinitely on the basis of a requirement that is neither authorized by statute nor necessary to enforce the conditions of release might well be viewed as arbitrary and capricious government action, *cf. Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 11-12 (1979); *Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974).

9

The Government suggests, and the majority seems to find significant, that by insisting on unconditional release, Foy appears to have made a deliberate choice of no release over conditional release. Appellee's Br. 3, 54 n.13; Maj. Op. 15 n.7. But the argument proves too much, for while a rational actor might well go through the motions of signing a form necessary to secure his release from a federal prison, whatever his actual intentions, no one argues that Foy is making rational choices or is free of mental illness. Indeed, that is the very reason he has been recommended for *conditional* release and the reason that the IDRA speaks in mandatory terms that do not turn on the purported "choice" of the detainee. Regardless of whether a civilly committed individual irrationally insists on unconditional release or even irrationally prefers to remain in a federal prison over a less restrictive state facility, once he is determined not to pose a danger upon release with appropriate conditions (as six years of reports attest in Foy's case), the IDRA mandates that the facility director certify, 18 U.S.C. § 4246(e), and the District Court, upon confirmatory hearing, order that conditional release, 18 U.S.C. §§ 4246(e)(2)(A), 4247(h). In sum, arguably irrational choices of a person with mental illness, where irrelevant to the statutory qualifications for conditional release, cannot justify a facility director's refusal to certify, much less a federal court's disregard of the statutory mandate or its tolerance of deprivations of liberty greater than necessary. *See Greenholtz*, 442 U.S. at 11-12; *Wolff*, 418 U.S. at 556-57.

Fourth, even if it were deemed permissible to condition Foy's release on his pre-release assent to the prescribed regimen of medical care, how is the Government's interest in ensuring compliance with this condition (not to

10

mention its presumable interest in reducing by at least one the ranks of the prison population) actually served by requiring Foy to go through the motions of signing some form saying that he promises to self-medicate? Indeed, even assuming the detainee is a rational actor, what meaningful assurance of future compliance would any detainee's signature actually provide on the one form on which his release from prison depends? Instead, if the Government is truly interested in assuring Foy's future compliance with the condition of continued medication, wouldn't it make far more sense for it to expend de minimus resources identifying a less restrictive but controlled state facility to which Foy can be released and where his medication will be properly administered—the solution also mandated by the IDRA, *see infra*—than to deploy yet more prosecutors in yet another jurisdiction litigating, in effect, the legal significance of Foy's failure to affix a virtually meaningless signature to a form document? Yet, as next discussed, despite the logic of this approach and despite the Government's statutory obligation to pursue it, Foy raises a substantial claim that the Government has violated this IDRA requirement as well.

**B.**

The IDRA also requires that the Government "shall continue periodically to exert all reasonable efforts to cause . . . a State [where the person is domiciled or was tried] to assume such responsibility for the person's custody, care, and treatment." 18 U.S.C. § 4246(d). There is only a single reference in the record to an effort to have a State assume such responsibility for Foy's treatment: a 2007 letter from the Pennsylvania Office of Mental Health & Substance Abuse Services denying Foy entry to a Pennsylvania State Hospital for inpatient treatment. The Government acknowledged in

11

2007 that it was obligated by statute to contact the Commonwealth of Pennsylvania to request a transfer for Foy, but nothing in the record suggests that that effort was anything more than perfunctory or that the Government has made any effort whatsoever to meet this obligation since then. Foy thus alleges, pointing to substantial support in the record, that the Government has been violating his statutory rights under the IDRA.

Moreover, these are not garden-variety statutory claims. Because of the Government's alleged violations of the IDRA, Foy has been subject to an ongoing and indefinite incarceration for years on end without a conviction and with the availability of less restrictive state facilities allegedly left unexplored. And as noted earlier, the circumstances of Foy's continued civil commitment in federal custody raise significant statutory and due process concerns. *See Foucha*, 504 U.S. at 80; *Addington*, 441 U.S. at 425. Resolving these claims is clearly "in the interest of justice."

## II.

Foy may properly raise these challenges to his detention under the IDRA pursuant to 18 U.S.C. § 4247(h), which allows Foy's counsel—given the refusal of the director of the facility where Foy was detained to file the required certificate of conditional release—to make a motion for a hearing to conditionally discharge Foy from his commitment, and the Government acknowledges that the District Court for the Western District of Missouri, the court that ordered Foy's civil commitment in September 2007, would have jurisdiction over these claims under that section if this case is transferred. According to the Government, however, a transfer would be futile because the district court there "has repeatedly denied

12

exactly the same motion that Foy wants to litigate here." Appellee's Br. 53. The record does not support that contention.

While Foy undoubtedly has filed numerous petitions for relief in the Western District of Missouri and elsewhere, in proceeding pro se in what the record suggests is all but one of those proceedings, Foy has not been able to coherently present the claims raised here, so other courts, understandably, have not reached the merits of those claims. *See, e.g.*, *Foy v. U.S. Gov't*, No. 15-1901, 2015 WL 2131410, at \*2 (D. Minn. May 7, 2015) ("Foy's petition for habeas corpus relief is, to say the least, difficult to follow. A good deal of the petition and accompanying documents consist of photocopies of books or magazine articles, none of which appears relevant to any possible claims under § 2241. Much of the remainder, assumedly written by Foy himself, is nearly incomprehensible."); *Foy v. Jett*, No. 14-5063, 2015 WL 439614, at \*1 (D. Minn. Feb. 3, 2015) ("Foy's petition is difficult to decipher."). In the District Court in this case, on the other hand, Foy had the benefit of a dedicated and diligent appointed counsel who painstakingly assembled Foy's court and detention center records from across the country and identified potential legal claims under the byzantine provisions of the IDRA. Counsel's careful research and zealous advocacy enabled her to present substantial challenges to Foy's ongoing incarceration for the first time in this Court. Thus, the issues presented here cannot be fairly characterized as the same ones that Foy has raised unsuccessfully in his pro se filings.

In addition, despite the majority's implication otherwise, the *issues* presented here are not the same as those raised in Foy's single prior counseled proceeding that was

13

initiated in the Western District of Missouri on September 4, 2014 and dismissed shortly thereafter. While it is true that the district court there "denied Foy the *relief* he seeks here," Maj. Op. 15 n.7 (emphasis added), it is also the case, as reflected in the transcript of that proceeding, that Foy's appointed counsel appears to have accepted the Government's contention that Foy was required to agree to the conditions of his release as a prerequisite to conditional release and therefore focused his efforts on trying to elicit on the record Foy's agreement or explanation for disagreement, *see* Supp. App. 178-85. In short, the Western District of Missouri has never been presented with the statutory and due process arguments raised by Foy's counsel in the case that gives rise to this appeal.

Nor is transfer rendered futile by the theoretical possibility that Foy could initiate a new proceeding in Missouri, with a successive motion seeking release under § 4247(h). Even assuming Foy were somehow able to overcome the procedural and logistical hurdles associated with successive filings, he assuredly will not be able to present the substantial issues raised by this case if left to proceed pro se, and his chances of being appointed counsel or having his arguments seriously considered on the merits appear vastly diminished in the absence of a transfer. Indeed, the best case scenario, absent a transfer, is that Foy, proceeding pro se or somehow securing appointed counsel, files a new petition re-raising the claims argued here; those arguments are cogently presented to the District Court for the Western District of Missouri; and that court eventually grants Foy's conditional release—a process that would entail months, if not years, of additional delay in his conditional release. Worse, it may never come to pass, and no court will

14

consider the merits of Foy's significant statutory and constitutional claims. Transfer is simply the most efficient and just way of ensuring that an individual, who in our Circuit received the benefit of devoted counsel, has the opportunity to have his claims expeditiously addressed in the appropriate jurisdiction.

Finally, there is no merit to the Government's argument that we should decline to order a transfer because Foy did not request that relief in this case. As even the majority recognizes, given that Foy has contended that the District Court here had jurisdiction, his argument of course has been that a transfer was not necessary. Maj. Op. 15 n.6. In any event, the statutory language of § 1631 is compulsory and requires that the court "shall, if it is in the interest of justice, transfer such action" to a court of competent jurisdiction, even if it has not been asked to do so by either party. *See Rodriguez-Roman v. I.N.S.*, 98 F.3d 416, 423 n.9 (9th Cir. 1996) ("The duty imposed on the court is mandatory. It *must* determine whether transfer is in the interests of justice."); *see also Phillips*, 173 F.3d at 610.

In sum, I believe that Foy has raised substantial questions about fundamental deprivations of liberty and due process extending over many years, and I do not see the benefit of the added delay inherent in additional briefing on the transfer issue in the District Court, much less a possible appeal back to this Court. Rather, the "interest of justice" would be best served by a swift transfer to the Western District of Missouri for the district court there to determine whether Foy's statutory and constitutional rights have been violated, and, if they have, the proper remedy for these violations.

15

*  *  *

For the above-stated reasons, I would remand this case with instructions to transfer pursuant to 28 U.S.C. § 1631 and thereby ensure that Foy has the opportunity, without further delay, to have his case heard by a court of competent jurisdiction.

16